**A.J. TAFT COAL CO., INC.,**
Plaintiff-Appellee,

Russell Coal, Inc.; Nickel Plate Mining Company, Inc.; Jim Walter Resources, Inc.; Drummond Company, Inc.; Alabama By-Products Corp., Plaintiff-Intervenors, Appellees,

v.

Joseph P. CONNORS, Sr., Donald E. Pierce Jr., William Miller, William B. Jordan and Paul R. Dean, as Trustees of the United Mine Workers of America 1950 Pension Trust, United Mine Workers of America 1950 Benefit Plan and Trust, United Mine Workers of America 1974 Pension Trust and United Mine Workers of America 1974 Benefit Plan and Trust, Defendants-Appellants.

Joseph P. CONNORS, Sr., Donald E. Pierce, Jr., William Miller; William B. Jordan, Paul R. Dean, Trustees, Plaintiffs-Appellants,

v.

**DRUMMOND COMPANY, INC. and Alabama By-Products Corporation,**
Defendants-Appellees.

No. 86–7482.

United States Court of Appeals,
Eleventh Circuit.

Oct. 26, 1987.

Rehearing Denied Dec. 14, 1987.

Stephen J. Pollak, Shea & Gardner, Wendy S. White, Gerald E. Cole, Washington, D.C., Robert H. Stropp, Stropp & Nakamura, Birmingham, Ala., for Trustees of United Mine Workers of America Health & Ret. Funds.

Margaret M. Topps, Washington, D.C., for appellants Connors, et al.

Fournier J. Gale, III, David M. Smith, Maynard, Cooper, Frierson & Gale, P.C., Charles A. Powell, III, Birmingham, Ala., for appellees.

Before VANCE and KRAVITCH, Circuit Judges, and BROWN[*], Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

The District Court allowed the offensive use of collateral estoppel by granting Taft Coal Company's motion for summary judgment. We reverse the District Court because the prior ruling on the issue presented here was not crucial and necessary to the holding and thus can not be used as offensive collateral estoppel.

A.J. Taft Coal Company (Taft) brought this class action on behalf of all Alabama coal companies who are signatories to the National Bituminous Coal Wage Agreement (NBCWA) seeking a declaratory judgment and permanent injunction against the Trustees of the United Mine Workers of America Health and Retirement Funds (the Funds), a nationwide multi-employer plan. The coal companies contribute to the Funds under the NBCWA based on a set amount per ton of coal they produced.[1] Taft contends that the calculation of the amount of coal it produces should be reduced to account for any extraneous moisture in the coal.[2] Taft claimed, through nonmutual collateral estoppel,[3] that another Court had decided that the NBCWA allowed a moisture deduction and that the Trustees should be bound by that holding. The Trustees filed a counterclaim against the class members alleging that they were delinquent on their contributions to the Funds by claiming an extraneous moisture deduction when calculating their contributions to the Funds because a moisture deduction was not allowed under their interpretation of the NBCWA.

Faced with dual motions for summary judgment, the District Court granted Taft's motion holding that the Trustees were collaterally estopped from litigating the validity of a moisture deduction since the issue

---

[*] Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Article XX(d) of the 1984 NBCWA, in part, provides:

   (d) Contributions by Employers
   (1) During the life of this Agreement, for the periods of time indicated below, each signatory Employer engaged in the production of coal shall contribute to the Trusts referred to in this Article the amount specified below based on cents per ton on each ton of two thousand (2,000) pounds of bituminous coal produced by each Employer for use or for sale * * *

   This clause, requiring employer contributions based on tons of coal produced for use or sale, has been used in each contract since the 1946 NBCWA created the United Mine Workers' Welfare and Retirement Fund. The NBCWA contract is renegotiated roughly every three years; the current version was signed in 1984.

2. Extraneous moisture is that which is over and above the normal moisture of coal in its natural state. This excess moisture increases the weight of the coal and thus, the pension contribution, based on the weight of the coal is also increased.

3. Taft was not a party in the previous case and asserts nonmutual collateral estoppel under *Parklane Hosiery Company v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Previously, a mutuality of parties was necessary for the use of collateral estoppel. *See, e.g., Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936) ("Unless both parties or their privies are bound by a prior judgment, neither may use the prior judgment as determinative in a later case"); *Bigelow v. Old Dominion Copper Co.*, 225 U.S. 111, 127, 32 S.Ct. 641, 642, 56 L.Ed. 1009 (1912) ("It is a principle of general elementary law that the estoppel of a judgment must be mutual."). Later, the mutuality requirement was extinguished. Now, even one who was not a party to the previous suit may use a judgment as binding in a later action.

was previously decided adversely to them in *Combs v. Sun-Up Coal Co.*, No. CV80–P–236–J (N.D.Ala. Aug. 12, 1980).

### Wash First, Weigh Later

■ Since 1980,[4] Taft has made its monthly contribution to the Fund by calculating the tons of coal produced for use or sale after it has processed or washed the coal as required by the end use of the coal.[5] The Alabama coal companies, for whom Taft spoke, also reduced their pension fund contributions in consideration of the amount of extraneous moisture in the coal produced. Alabama coal companies commonly exclude extraneous moisture in calculating the tons of coal produced because that is the method used to levy Alabama state taxes. We have only been directed to two companies outside Alabama who have been allowed excess moisture deductions under the NBCWA.[6]

Apparently, by 1983, word had spread in the industry that Alabama coal companies were allowed a moisture deduction for any excess moisture they could adequately document. Prompted by this, the Trustees mailed a letter on October 24, 1985, to all signatories of the contract, including the Alabama companies, disallowing any moisture deductions for all contributions to the Funds made after that date. This attempt by the Trustees to devise a uniform national policy was construed by Taft as a unilateral change in the NBCWA. Taft brought this suit to prevent enforcement of this new interpretation of the NBCWA. Taft argued that the validity of an extraneous moisture deduction under the NBCWA was

previously litigated by the Trustees and that they should be collaterally estopped from relitigating that issue in the present action.

### The First Taste

In 1980, the Trustees brought suit against Sun-Up Coal Company, an Alabama coal company, for under-contribution to the pension fund for the period of June 1976 through July 1979. *Combs v. Sun-Up Coal Company*, No. C.V.80–P–236–J (N.D. Ala., Aug. 12, 1980). The Sun-Up Company had been taking deductions for excessive moisture and non-combustible matter in the coal it produced. A review of the record in *Sun-Up* demonstrates that the primary contention was not whether the NBCWA allowed a moisture deduction, but rather, even if it did, the Sun-Up Company failed to adequately establish the amount of moisture deduction it had claimed. In the end, the Trustees were awarded total damages of $37,490 for underpayment to the Funds. The Court allowed Sun-Up to claim $6,983.93 as a moisture deduction which they adequately proved and a $14,840.85 deduction which Sun-Up proved was due to washer loss and impurities in the coal. The Trustees did not appeal the portion of the decision which failed to disallow the $6,983.93 moisture deduction, nor did Sun-Up.

### A Second Bite at the Same Apple

The issue before us now is not the propriety of a moisture deduction from the coal produced or the merits of whether the Trustees' October 1985 letter constitutes

---

4. Taft became a signatory to the contract in 1971, but did not begin taking a moisture deduction until 1980.

5. Taft derives its "tons produced" figure through laboratory analysis of the percentage of moisture in the total coal produced. Then a percentage representing the inherent moisture of coal, anywhere from 1.5% to 2.88%, is subtracted from the moisture percentage figure to arrive at the amount of extraneous water. The moisture percentage, representing extraneous moisture in the coal, is deducted from the total tonnage to compute the contribution to the Funds.

6. One was a Colorado company who claimed that it dried its coal to zero percent moisture after production but prior to sale. The Trustees did not allow a total moisture deduction but allowed the company to deduct all moisture in excess of one percent. The second was a Kentucky company who was allowed to deduct a "reject" percentage for ash content and excessive moisture in 1979. However, the Trustees discontinued this allowance in 1983; the Kentucky company ceased operation shortly thereafter and the matter was never litigated.

an improper unilateral change in the NBCWA. Rather, the question now before us comes down to whether the Trustees are collaterally estopped by the decision in *Sun-Up* from challenging the Alabama companies' practice of taking moisture deduction in measuring the coal produced for the purpose of calculating their contributions to the Funds.

This Court recently stated the rule for applying collateral estoppel in *Hart v. Yahama-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir.1986).

> There are several prerequisites to the application of collateral esstoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a crucial and necessary part of the judgment in that earlier action. In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* at 1473, quoting *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352 (11th Cir.1985). *See also Stoval v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir. Unit A Aug. 1981); *Johnson v. United States*, 576 F.2d 606, 615 (5th Cir.1978).[7]

The issue in *Sun-Up* was a disagreement over the amount of a deduction that would be allowed for moisture content. The Trustees main contention was that even if a moisture deduction was permissible, Sun-Up had inadequately proved the amount of the extraneous moisture they claimed.[8] While the resolution of the legal issue of the propriety of the moisture adjustment

was part of the decision in *Sun-Up*, it was not crucial and necessary to the holding. The Trustees would not necessarily have found it important enough to expend additional resources to contest at trial or to appeal the unfavorable ruling when they already had obtained a favorable judgment on Sun-Up's failure to prove the amount of extraneous moisture in its coal.

The Findings of Fact and Conclusions of Law in *Sun-Up* demonstrate that the parties contested the validity of taking a moisture deduction and the District Judge concluded it was valid to take the moisture deduction under the NBCWA. The District Court stated that the Trustees "ha[ve] by evidence of [their] auditor indicated that such reductions, if adequately substantiated, would be correct." *Sun-Up* slip op. at 6. While the *Sun-Up* Court concluded that a moisture deduction was allowable under the NBCWA, this finding was not a crucial and necessary part of the *Sun-Up* holding and therefore cannot be used by Taft to estop the Trustees from litigating the issue here.

### Alternative Apples—Which One Was Bit When?

The Fifth Circuit, in *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. Unit A Dec.1981) (and cases cited therein), held that "it has always been the rule that although an issue was fully litigated and a finding made on the issue in prior litigation, the prior judgment will not act as collateral estoppel as to the issue if the issue was not necessary to the rendering of the prior judgment, and hence [is] incidental, collateral, or immaterial to that judgment." *See also, Exhibitors Poster Exchange, Inc. v. National Screen Service*

---

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8. "The basic difference in so far as the testimony given by the [Trustees], and the position taken here by [Sun-Up] relates to the failure of Sun-Up to have earlier documented its claim relating to washing loss and moisture content loss, as well as perhaps a question as to the sufficiency of the proof." *Combs v. Sun-Up Coal Co.*, No. CV–80–P–0236–J, unpublished slip op. at 6 (N.D.Ala. Aug. 12, 1980).

*Corp.*, 421 F.2d 1313 (5th Cir.1970) (inquiry foreclosed only as to those issues which were necessarily determined), *cert. denied,* 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971).

> The Fifth Circuit's rationale was
>
> first, an immaterial issue may not have been afforded the same careful deliberation and analysis as an issue necessary to the judgment. Second, and more important, a decision on an immaterial issue provides the losing party with no incentive to contest an erroneous decision by appeal.... Since one alternative ground will support the judgment, the losing litigant has little incentive to appeal another ground even if erroneous.

*Hicks,* 662 F.2d at 1168.

In *DeWeese v. Town of West Palm Beach,* 688 F.2d 731, 734 (11th Cir.1982), citing *Hicks v. Quaker Oats,* we held that "the existence of alternative grounds makes the application of collateral estoppel problematic."

In *Sun-Up,* it was undisputed that the auditors for the fund allowed a moisture deduction in Alabama at that time. This fact provided a sufficient basis for the Court's conclusion that the deduction was allowable without thoroughly examining the validity of this practice under the terms of the NBCWA. It is apparent that the Trustees, as the prevailing party on most of their claims in *Sun-Up,* had little incentive to expend a large amount of legal resources appealing a judgment that would have contributed little to the outcome of that case. As Judge Learned Hand once observed: "There is some reason for attaching more weight to findings which a court supposes to be necessary to its conclusions than to those which it does not. Their importance to the result may be thought to insure more deliberateness and care in their making." *Irving National Bank v. Law,* 10 F.2d 721, 724 (2d Cir.1926) (Hand, J.).

One of the goals underlying the doctrine of collateral estoppel is to preclude relitigation of identical issues and the resulting waste of judicial resources. Encouraging appeals on minor issues by over-applying this doctrine would frustrate that goal. To hold otherwise would require even successful litigants to vigorously pursue appeals of minor issues just to protect themselves from others, uninvolved in the current litigation from asserting the holding against them in the future. The Trustees prevailed on their primary challenge that the Sun-Up Company failed to prove the moisture deduction they had claimed and failed on their challenge to the moisture deduction itself. For the reasons stated in *Hicks,* the alternative grounds for the *Sun-Up* holding prevents the use of offensive nonmutual collateral estoppel—the issue was not necessarily fully litigated nor crucial and necessary to the holding of *Sun-Up.*[9]

Since *Sun-Up*'s alternative ground that a moisture deduction was valid under the 1984 NBCWA was not crucial and necessary to the judgment for the Trustees and consequently, there was no incentive to appeal that portion of the decision, we determine the District Court was in error in allowing Taft to use *Sun-Up* as offensive collateral estoppel against the Trustees in this case.

REVERSED.

---

**9.** Since the requirements for collateral estoppel were not met, we need to express no opinion on the fairness of its application.