**METRO CHARITIES, INC. and Robert Malone, Plaintiffs,**

v.

**Mike MOORE, Individually; Jim Warren, Individually; Don Bartlett and Ken Winter, Defendants.**

Civ. A. No. J90–0141(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 24, 1990.

Michael Farrell, Peter L. Doran, Wells, Moore, Simmons, Stubblefield & Neeld, Jackson, Miss., for plaintiffs-Metro Charities and Robert Malone.

Susan D. Fahey, Phelps, Dunbar, Jackson, Miss., for Ken Winter.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Mike Moore, Attorney General of the State of Mississippi, and Jim Warren, Special Assistant Attorney General, in their individual capacities, to dismiss or, in the alternative, for summary judgment pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, respectively. Plaintiffs Metro Charities, Inc. (Metro) and Robert M. Malone have responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

This case arises out of a state civil action brought by Mike Moore, Mississippi's attorney general, against these plaintiffs and others in which Moore sought to enjoin bingo games conducted by plaintiffs. The record in this cause reflects that plaintiff Malone is assistant director of plaintiff Metro Charities, Inc., a non-profit unincorporated association formed in 1988 for the stated purpose of "sponsoring and encouraging charitable, civic and educational work." As a means of raising funds, Metro sponsored bingo games in Jackson, Greenville and Meridian. Plaintiffs allege that although officials from the attorney general's office had previously assured them that their bingo operations were permitted by state law, on January 10, 1990, Moore, as attorney general of the State of Mississippi, filed a complaint for declaratory and injunctive relief in the Chancery Court of the First Judicial District, Hinds County, Mississippi, naming as defendants Metro and Malone, d/b/a Bingo Depot, *inter alia*. The complaint sought to have bingo declared a lottery and hence violative of the Mississippi Constitution[1] and to have Miss.Code Ann. § 97–33–51 (Supp. 1989), which purports to exempt certain bingo games from the general statutory prohibition against gambling, declared unconstitutional.[2] Additionally, the attorney general sought to enjoin bingo sponsors, including the plaintiffs herein, from violating the constitution by continuing their bingo operations. The chancellor immediately issued a temporary restraining order, enjoining Metro and Malone from conducting bingo games and from destroying, altering or disposing of any books, records, cash or equipment relating to their bingo operations, and further enjoining them from "withdrawing, transferring, or disposing of any real or personal property" including any and all bank accounts or other monies which amounted to bingo proceeds. The chancellor's order was issued without notice, as provided for by Rule 65(b) of the Mississippi Rules of Civil Procedure, upon the affidavit of Jim Warren wherein Warren stated that prior notice to Metro or Malone would likely result in their absconding with evidence.[3]

On the same day that the chancellor issued the temporary restraining order, Jan-

---

**1.** Article 4, Section 98, Miss. Const. of 1890 provides as follows:

> No lottery shall ever be allowed, or be advertised by newspapers, or otherwise, or its tickets be sold in this state; and the legislature shall provide by law for the enforcement of this provision; nor shall any lottery heretofore authorized be permitted to be drawn or its tickets sold.

**2.** In 1987, the Legislature enacted section 97–33–51 exempting "bingo games ... being held by and for the benefit of any nonprofit, civic, educational, wildlife conservation or religious organization with all proceeds going to said organization" from the general statutory prohibition against gambling.

**3.** The Mississippi rule is identical to Federal Rule 65(b):

> A temporary restraining order may be granted, without notice to the adverse party or his attorney if ... it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition....

uary 10, 1990, search warrants were issued by judges in Jackson, Meridian and Greenville for Metro properties at which bingo games were operated. According to plaintiffs' complaint, agents of the attorney general's office applied for the search warrants and prevailed on the Jackson Police Department and the Hinds County District Attorney's office to participate in the execution of the warrants in order to search the premises and seize any evidence of alleged violations of the Mississippi Constitution to assist in the prosecution of the civil lawsuit. That evening, the temporary restraining order and the warrants were served and executed by persons from the attorney general's office, the Jackson Police Department, the Hinds County District Attorney's office, the Hinds County Sheriff's office and the Mississippi Highway Patrol. All property and fixtures contained within the premises were seized. Thereafter, additional warrants were obtained pursuant to which Malone's and Metro's bank accounts were seized.

Ultimately, on April 27, 1990, the chancellor issued a permanent injunction over the vigorous objections of plaintiffs herein. The chancellor's order is presently on appeal to the Mississippi Supreme Court. Additionally, a criminal indictment was returned by a Washington County grand jury against Metro and Malone for racketeering activities, and in particular, the conduct of an illegal lottery. The criminal proceedings remain pending in the state courts, as does a civil forfeiture action which was commenced against the property seized in the course of the civil proceeding.

Plaintiffs have brought this action pursuant to 42 U.S.C. § 1983, charging that defendants Mike Moore and Jim Warren violated their Fourth, Fifth and Fourteenth Amendment rights by (1) conspiring to obtain a temporary restraining order without notice, (2) combining forces with local law enforcement officials in Jackson, Greenville and Meridian in order to approach state court judges for the purpose of causing the issuance and execution of search warrants so as to further a civil suit, (3) improperly using the search warrants, not to search for evidence of criminal activity, but to "dismantle" Metro's operation without any prior showing of criminal activity and without having first established probable cause, (4) seizing assets of Metro and Malone which were not shown to have any connection to any bingo activities, (5) engaging in selective prosecution since other bingo operators were not similarly sued, and warrants were not issued as to those who were, and (6) abusing the legal process by filing a civil suit to further political goals. Plaintiffs assert that defendants acted in bad faith and outside the scope of their prosecutorial function by wrongfully invoking the injunctive powers of a civil court for political reasons, unlawfully seizing money and property, using criminal investigative efforts to aid in the civil action, and using the civil action for the purpose of fostering a criminal investigation. It is plaintiffs' theory that the defendants engaged in such conduct, all of which violated their constitutional rights, for the ulterior motive of putting political pressure on the state legislature to allow the people of the state to vote on a constitutional amendment to authorize a state-sponsored lottery. Defendants Moore and Warren contend that plaintiffs' claims are barred by collateral estoppel and/or res judicata, that they are entitled to prosecutorial immunity from plaintiffs' claims and that they are entitled to qualified good faith immunity from plaintiffs' claims.

### Collateral Estoppel/Res Judicata

The principle of res judicata precludes parties or their privies from relitigating issues that were or could have been raised in an action in which there has been a final judgment on the merits. Under the related concept of collateral estoppel, once a court has decided an issue essential to its judgment, that decision precludes relitigation of that issue in a suit on a different cause of action involving a party to the first case. In an early case addressing the preclusive effect to be accorded a prior state court judgment in a subsequent federal civil rights proceeding, the United States Supreme Court, in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), stated:

We in no way intend to suggest that there is a right of access to a federal forum for the disposition of all federal issues, or that the normal rules of res judicata and collateral estoppel do not operate to bar relitigation in actions under 42 U.S.C. § 1983 of federal issues arising in state court proceedings.

*Huffman*, 420 U.S. at 606 n. 18, 95 S.Ct. at 1209 n. 18; *see also Preiser v. Rodriquez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973) (implicitly approving view of federal courts that principles of res judicata are fully applicable to civil rights suits under section 1983). Thereafter, in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Court observed that there is no universal right to litigate a federal claim in a federal district court, and made it clear that the issue-preclusive collateral estoppel doctrine, barring relitigation of issues that were actually litigated in a state court proceeding, applies in a subsequent federal section 1983 action. The Court explained:

> There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

*Allen*, 449 U.S. at 104, 101 S.Ct. at 420. Finally, in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Court specifically held that federal section 1983 actions are subject to rules of claim preclusion as well as issue preclusion, stating:

> Having rejected in *Allen* the view that state-court judgments have no issue preclusive effect in § 1983 suits, we must reject the view that § 1983 prevents the judgment ... in [a] state court proceeding from creating a claim preclusion bar.

*Migra*, 465 U.S. at 79, 104 S.Ct. at 895. The court explicitly held that "section 1983 ... does not override state preclusion law and guarantee [a party] a right to proceed to judgment in state court on her state law claims and then turn to federal court for adjudication of her federal claims." *Id.* at 85, 104 S.Ct. at 898.

■ To determine in a particular case whether a prior state court judgment is to be accorded preclusive effect in the later federal proceeding, reference is had to state law since the rules of preclusion are founded on the premise that a state court judgment is to be given the same preclusive effect in federal court as the judgment would have in the courts of the state from which the judgment emerged. *See Allen*, 449 U.S. at 96, 101 S.Ct. at 415; *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). Under Mississippi law,

> [w]hen collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action. *Lee v. Wiley Buntin Adjuster, Inc.*, 204 So.2d 479 (Miss.1967) and *Lyle Cashion Co. v. McKendrick*, 227 Miss. 894, 87 So.2d 289 (1956). And, collateral estoppel, unlike the broader doctrine of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated. *Johnson v. Bagby*, 252 Miss. 125, 171 So.2d 327 (1965).

*Dunaway v. W.H. Hopper & Associates, Inc.*, 422 So.2d 749, 751 (Miss.1982).

■ Plaintiffs' claims that the defendants violated their constitutional rights stem from the state court proceedings brought by defendants and the defendants' actions in connection therewith. Yet plaintiffs assert that collateral estoppel does not operate to bar any of the issues raised in this case since these civil rights claims were not a necessary part of, nor were they actually decided in the chancery court action. According to plaintiffs, their current claims were not raised in the state suit and were certainly not essential to the judgment, which decided the limited legal question of whether bingo constitutes a lottery. Indeed, under plaintiffs' version of their claims, the issues raised in this

case are "totally unrelated" to those issues raised and decided in the state court suit. However, the record in this case amply demonstrates that many, though not all of the claims currently advanced by plaintiffs, were raised in one form or another in the state court. Even though they were not necessarily couched in terms of specific constitutional violations, plaintiffs did persistently and vehemently object to the propriety of the state court proceedings for many of the very same reasons as are now claimed by plaintiffs to underlie the alleged section 1983 violations. Plaintiffs asserted, for example, that the chancery court suit was filed in bad faith as a "political stunt," that the temporary restraining order was improperly issued without notice as a re-

sult of false statements by Jim Warren, that the seizure of Malone's and Metro's property was improper and in violation of their due process rights, and that Moore improperly used criminal investigators to aid in the prosecution of the civil lawsuit.[4] In the court's opinion, it is at least arguable that these issues were determined by and were essential to the state court's judgment inasmuch as the issues relate directly to the propriety of that court's actions. As discussed infra, plaintiffs did not challenge in state court defendants' actions relative to the search warrants. Having not raised those issues, plaintiffs cannot now be precluded from raising them under the guise of collateral estoppel. And it is undisputed by the parties that plain-

**4.** On January 11, 1990, plaintiffs moved to vacate the temporary restraining order claiming that the defendants' failure to notify them of the request for the TRO "flies in the face of the due process rights guaranteed by the United States Constitution and the Mississippi Constitution." Further, they asserted that the suit against them was an improper means of challenging the constitutionality of the state bingo exemption statute and that "the Attorney General's office has acted in bad faith, and grossly misrepresented its legal rights to this Court." The court denied the motion.

In a January 16, 1990 Emergency Motion to Modify Temporary Restraining Order, plaintiffs herein urged that the portion of the TRO ordering sequestration of funds and records deprived Metro of "constitutional property and liberty rights without due process of law." They further argued that sequestration of Malone's personal funds "deprive[d] him of his property and liberty in his personal funds without due process in violation of the 14th Amendment of the United States Constitution." The motion was denied.

On January 17, 1990, plaintiffs filed an Emergency Application for Writ of Mandamus, citing the "highly prejudicial and irregular proceedings," and asserting that "blatant violations of the petitioners' due process rights ... require[d] the immediate relief" of the Mississippi Supreme Court. In their memorandum, plaintiffs complained, inter alia, that the complaint had not alleged a violation of any civil or criminal statute and that the TRO had been wrongfully granted without notice to them. They were granted no relief.

A week later, on January 23, plaintiffs moved to disqualify Jim Warren as counsel of record, contending that Warren's participation in the case was improper in view of plaintiffs' need to cross-examine him concerning the statements in his affidavit in support of the request for a TRO

regarding the alleged reasons for not giving plaintiffs prior notice of the request for the TRO.

Also on January 23, plaintiffs filed a Motion for Sanctions For Obtaining A Temporary Restraining Order Without Notice Based on False and Inaccurate Statements Contained in the Complaint and Supporting Affidavits. The alleged "false statement" was the statement by Jim Warren that "the State of Mississippi had a substantial likelihood of succeeding on the merits of issue [sic] that bingo is a lottery under § 98 of the Mississippi Constitution." Plaintiffs sought attorney's fees in the amount of $25,000 as well as an order immediately vacating the TRO.

Plaintiffs moved for judgment on the pleadings on February 4, 1990, alleging, inter alia, that (1) Mike Moore had no authority, statutory or common law, to sue to enjoin violations of the Mississippi Constitution, (2) even if he had the authority to sue, the legislature, and not Malone and Metro, was the proper defendant, and (3) defendants had failed to join necessary parties to the suit, in particular, other sponsors of bingo games and raffles.

Finally, in their February 12, 1990 answer to the defendants' complaint for declaratory and injunctive relief, plaintiffs asserted that (1) Mike Moore and Jim Warren filed the chancery court action "as a political stunt" to indirectly pressure the state legislature to pass a resolution allowing the people to vote to repeal the constitutional ban on lotteries; (2) Mike Moore obtained the temporary restraining order "without a sufficiently [sic] legal or factual basis on the assumption that the statutory exemption given to the defendants to operate bingo games and raffles is unconstitutional"; and (3) "Mike Moore used criminal investigators and undercover agents from the White Collar Crime Section to advance and aid in the prosecution of this civil lawsuit."

tiffs were wholly unsuccessful in their challenge of the defendants' actions and the state court's ruling, the chancellor clearly having rejected each of plaintiffs' claims, apparently never wavering from his original decision to grant the injunctive relief requested by defendants. Thus, to have proceeded to final judgment, the chancellor must have concluded that defendants' actions and his decision were not improper. Thus, it would seem that as to these issues, collateral estoppel could be applicable. However, whether or not collateral estoppel principles apply, plaintiffs' claims are barred. That is, even if the court were to accept plaintiffs' argument that the claims raised in this lawsuit were not raised in the chancery court, it would nevertheless be the case that the plaintiffs would be barred form asserting them under principles of res judicata.

In *Walton v. Bourgeois*, 512 So.2d 698 (Miss.1987), the Mississippi Supreme Court explained, regarding res judicata, that

> 'a judgment is conclusive not only on questions actually contested and determined, but on all matters which might have been litigated and determined in the suit.'

*Walton*, 512 So.2d at 702 (quoting C.J.S. *Judgments* § 716, at 186 (1947)). Thus, if the requisite elements are present to warrant the application of res judicata, all claims that were raised, or could have been raised in the prior proceeding are barred.

> In other words, the doctrine of res judicata bars litigation in a second lawsuit on the same cause of action 'of all grounds for, or defenses to, recovery that were available to the parties [in the first action] regardless of whether they were asserted or determined in the prior proceeding.'

*Dunaway*, 422 So.2d at 751 (quoting *Key v. Wise*, 629 F.2d 1049, 1063 (5th Cir.1980), *cert. denied*, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981)). Thus, when the elements are satisfied, the plaintiffs will be held barred from relitigating any claims that were or could have been decided in the prior state court case.

■ Res judicata applies if four identities are satisfied: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. *Dunaway*, 422 So.2d at 751. Plaintiffs assert that the doctrine cannot be held applicable to their claims since neither the parties in this lawsuit nor the causes of action are the same as those in the prior state court proceeding. The court finds no merit in plaintiffs' position in this regard. The parties are indeed the same in both cases. Moreover, while plaintiffs claim that the state cause of action concerned only an alleged violation of the Mississippi Constitution by certain bingo operators and that there is no connection between the issues in this case and the state court case, it is clear from plaintiffs' own filings in the state court action that they viewed the case much more broadly. That is, plaintiffs interjected the issues of whether the manner in which these defendants sought to challenge the constitutional provision was appropriate and whether the remedy sought and obtained by these defendants was proper. The propriety of the proceedings, therefore, was an issue clearly broached. In any event, there certainly was a sufficient inter-relatedness between certain of plaintiffs' present claims and the state court action such that the claims could, and should have been raised before the chancellor.

■ Plaintiffs seem to be of the view that they had a right to withhold any federal claims for presentation to this court. However, as the Court in *Allen* clearly recognized, there is no universal right to litigate federal claims in federal court. And it is beyond question that "a § 1983 claim can be advanced in a state court suit, as state courts exercise concurrent jurisdiction with federal courts over such claims." *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir.1984) (cited in *Flores v. Edinburg Consolidated Independent School District*, 741 F.2d 773, 777–78 n. 5 (5th Cir.1984)). *See also Hathorn v. Lovorn*, 457 U.S. 255, 269, 102 S.Ct. 2421, 2430, 72 L.Ed.2d 824

(1982) (state courts have constitutional obligation to uphold federal law).

█ While in the court's opinion collateral estoppel and or res judicata operate to bar the claims by plaintiffs strictly relating to the chancery court action, the court concludes that the doctrine has no application to plaintiffs' claims relating to the procurement and execution of search warrants, described supra. There is no indication in the record that these issues were actually raised nor has it been shown that there was presented any reason or opportunity in the state court action for plaintiffs to raise such matters. Plaintiffs' complaint here seeks damages for the alleged unlawful procurement and execution of the warrants. There is nothing to indicate that any evidence obtained through the use of the warrants was sought to be admitted in the state proceeding, and there would accordingly have been no occasion for plaintiffs' having registered an objection with the chancellor.[5] As to those claims, however, the court concludes that defendants are shielded from liability by prosecutorial and qualified immunity.

*Prosecutorial Immunity*

█ Defendants Moore and Warren claim absolute prosecutorial immunity as a complete defense to all of plaintiffs' charges, including plaintiffs' claims relative to the procurement and execution of the search warrants. They contend that since they were at all times acting within the scope of their prosecutorial duties as established by state law, they are absolutely immune.

The United States Supreme Court has consistently held that state prosecutors have absolute immunity from monetary liability under section 1983 for quasi-judicial functions, including initiating actions and determining whether to bring such actions, whether civil enforcement proceedings or criminal proceedings. *See Imbler v. Pacht-*

*man,* 424 U.S. 409, 439, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976); *Butz v. Economou,* 438 U.S. 478, 516, 98 S.Ct. 2894, 2916, 57 L.Ed.2d 895 (1978) (officials are absolutely immune for their part in making decision whether to initiate or continue proceeding). Prosecutorial immunity is based on the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler,* 424 U.S. at 422–23, 96 S.Ct. at 991. "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* The immunity is available, however, only as to the prosecutor's exercise of quasi-judicial power, i.e., when he performs advocacy functions as an officer of the court, and does not extend to administrative, investigative or legislative functions. Plaintiffs assert that Moore and Warren exceeded the scope of their prosecutorial function and, as to all acts complained of, were acting in a legislative, investigative and/or administrative capacity such that they acquired no immunity.

Initially, plaintiffs argue that while absolute prosecutorial immunity does extend to civil enforcement proceedings, it does not encompass cases such as this, where the government is pursuing an administrative enforcement action that is not specifically authorized by statute. The court finds no merit in this position. Absolute immunity is afforded those charged with the civil enforcement of state laws. The attorney general is, under Mississippi law,

> the chief legal officer and adviser for the state, both civil and criminal and is charged with managing all litigation on behalf of the state.... He shall have the powers of the attorney general at

---

**5.** Defendants herein assert that the appropriate forum for any such objections is the Hinds County Circuit Court, where civil forfeiture proceedings as to the seized property are currently pending. Plaintiffs certainly can challenge the propriety of the seizure in that proceeding.

That fact, though, has no bearing on the determination by this court of whether collateral estoppel or res judicata would bar such a claim in this case. These doctrines relate only to issues that have been decided or could have been raised in *prior* proceedings.

common law and is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest.

Miss.Code Ann. § 7–5–1 (1972). At common law, the state attorney general was vested with "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order and protection of public rights." *Capitol Stages, Inc. v. State of Mississippi*, 157 Miss. 576, 128 So. 759, 763 (1930) (citing 2 R.C.L. §§ 4 and 5, at 915–17). The state court action was, therefore, a civil enforcement proceeding of the type for which absolute immunity applies.

In an effort to avoid application of the immunity doctrine, plaintiffs claim that Moore, in filing the state court action, acted as a plaintiff, not a prosecutor, such that prosecutorial immunity is inapplicable. In *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir.1988), the court held that "[s]tate actors, other than prosecutors, may be liable for damages for bad faith prosecution, if they join in malicious prosecution by prosecutors, or if their malice results in an improperly motivated prosecution without probable cause." From the theory that the objective of the chancery lawsuit was to pressure the legislature into passing a constitutional amendment, plaintiffs reason that Moore was acting as a legislative lobbyist, using the civil courts for ulterior motives. That is, plaintiffs claim that Moore abused the judicial process for political reasons. It has been stated that

> [L]itigiousness which gives rise to a common law tort action for misuse of legal procedure may be so egregious as to constitute a violation of Section 1983 as well, if the tort-feasor, under color of state law, subjects the tort victim to a deprivation of Constitutional dimension.

*Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir.1989) (quoting *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978)); *see also Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir.1988) (bad faith prosecution violates constitutional rights for purposes of section 1983).

■ As previously expressed, the policy underlying absolute immunity is a concern with the chilling effect of potential section 1983 damages litigation upon the exercise of decision-making authority by persons to whom the immunity is granted. For that reason, where the defense is one of prosecutorial immunity, as opposed to qualified immunity, there may be no inquiry into the defendants' state of mind. In *Imbler,* the Court recognized that absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully, or even maliciously. *Imbler,* 424 U.S. at 418–19, 96 S.Ct. at 989. Thus, regardless of their motivation in bringing the action, so long as defendants were performing a prosecutorial function, they enjoy absolute immunity from plaintiffs' claims relative to the civil proceeding. And in the court's view, it is manifest that in proceeding with the civil litigation before the chancery court, Moore and Warren were acting in their prosecutorial capacities on behalf of the state. *See Russell v. Millsap,* 781 F.2d 381 (5th Cir.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986) (prosecutors seeking to enjoin operation of massage parlor and prostitution activities were performing typical prosecutorial functions for which they had absolute immunity from claim for civil liability).[6]

■ Plaintiffs next assert that Moore and Warren engaged in conduct that was not prosecutorial, but merely investigative, for which they have no immunity. In particular, they assert that the attorney general's office was responsible for the coordina-

---

**6.** In response to the federal plaintiff's argument in *Russell,* that he was denied due process in the state court action, the Fifth Circuit responded that such a claim "approache[d] the ludicrous," for the plaintiff had "received notice of the charges, both criminal and civil, he was represented by counsel and was given an opportunity to be heard before an impartial tribunal." *Rus-*

*sell,* 781 F.2d at 384. That conclusion applies equally in the case *sub judice.* In the state court case, plaintiffs were represented by counsel who made their position clearly known throughout; counsel undertook every possible effort to challenge the relief sought by these defendants but simply proved unsuccessful at every turn.

tion of search warrants in three cities to dismantle the plaintiffs' bingo operation and seize their bank accounts. In *Marrero v. City of Hialeah*, 625 F.2d 499, 505 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), the Fifth Circuit, citing *Imbler*, held that a prosecutor who assists, directs or participates with police in obtaining evidence prior to indictment is functioning in an investigative capacity rather than in his quasi-judicial capacities of "deciding which suits to bring and conducting them in court." Thus, for the type of conduct alleged by plaintiffs relative to the search warrants, defendants would not enjoy absolute immunity and could avoid liability only if they were qualifiedly immune from suit.

*Qualified Immunity*

 State officials sued in their individual capacities enjoy a qualified immunity unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Defendants here are sued in their individual capacities. The defendants clearly enjoy prosecutorial immunity for their conduct in connection with the filing and prosecution of the chancery action. And regarding such activities as would have exceeded their prosecutorial immunity, there exists no basis for liability against defendants. It is undisputed that the warrant was applied for before and issued by a neutral and disinterested county court judge. The Fifth Circuit has held that "a judge's determination of probable cause breaks the chain of causation and insulates the initiating party from liability." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir.), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 772, 74 L.Ed.2d 984 (1982). In any event, plaintiffs have not alleged in this case that either Moore or Warren was involved in any such activities. That is, there is no allegation that either Moore or Warren had any personal involvement in assisting, directing or participating in the obtaining of or execution of search warrants. Rather, plaintiffs have claimed only that agents of the attor-

ney general's office engaged in such conduct. Personal involvement is a prerequisite to individual liability under section 1983.

Based on the foregoing, it is ordered that the motion of defendants Moore and Warren to dismiss or for summary judgment is granted.

A separate judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

ORDERED.