**Robert L. HAYNES, Plaintiff,**

**v.**

**Nicholas LEMANN, Alfred A. Knopf, Inc., Random House, Inc., Vintage Books, Anthony Geffen, British Broadcasting Corp., and Does, 1 Thru 50 Inclusive, Defendants.**

**No. 2:95CV89–B–O.**

United States District Court, N.D. Mississippi, Delta Division.

Dec. 7, 1995.

Order Supplementing Decision Feb. 27, 1996.

---

Robert L. Haynes, Los Angeles, CA, pro se.

John C. Henegan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, James A. Klenk, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause is presently before the court on the defendants' motion for summary judgment. Upon due consideration of the motion, the pro se plaintiff's response thereto, the affidavits and the memoranda submitted by the parties, the court is prepared to rule.

This is the plaintiff's second attempt to sue the author and publisher of *The Promised Land: The Great Black Migration and How It Changed America* (*"The Promised Land"*). The defendant Nicholas Lemann wrote the book and it was published by Alfred A. Knopf, Inc. ("Knopf"). The book

recounts the Twentieth Century migration of millions of African–Americans from the cotton fields of the Deep South to Chicago and the origin of the Great Society social programs of the 1960's. The narrative is presented from two perspectives—the politicians' and the migrant families'.

One of the principal migrants depicted in *The Promised Land* is Ruby Daniels Haynes. Ruby Haynes' life history, including her experience as a single welfare mother trying to raise eight children in a housing project in Chicago, is told throughout two chapters of the book. Plaintiff Robert Haynes is one of Ruby Haynes' eight children. The book was published on February 15, 1991, and by March made the non-fiction best seller lists of the *Chicago Tribune* and *The Washington Post*.

On March 12, 1993, the plaintiff filed a four-count complaint in Los Angeles Superior Court against defendants Lemann and Knopf. Count I of the original complaint claimed that *The Promised Land* defamed the plaintiff by reporting that he was "kicked out" of the Navy and was a member of a gang while a teenager in Chicago. Count II claimed the book invaded the plaintiff's privacy by the public disclosure of embarrassing private facts (i.e., that he lost his virginity in a stairwell at the Robert Taylor Homes, a Chicago housing project; fathered illegitimate children; and was an alcoholic). Count III alleged that Defendant Lemann and the plaintiff had an oral agreement to pay the plaintiff "upon publication of the book," and Count IV claimed *quantum meruit* for the value of the plaintiff's "services" when he was interviewed in April of 1990.

The original defendants removed the case to the United States District Court for the Central District of California, invoking diversity jurisdiction as the basis for the district court's removal jurisdiction.

After a hearing before Chief Judge Manual Real on November 2, 1993, the district court granted the defendants' motion for summary judgment in an order entered on November 10, 1993. The district court found that the March 12, 1993 complaint was untimely, specifically, that the libel and privacy claims were barred by the one-year California statute of limitations on those actions, and by the two-year statute on oral contracts and *quantum meruit* claims.

The district court further held that the libel and privacy claims failed to state a claim on the merits. First, the documentation and admissions of the original defendants established the substantial truth of the alleged defamations. Moreover, the alleged defamations were not defamatory on their face; and there were no "special damages." As for the privacy claim, the district court held that the plaintiff could have no such claim because the "disclosures" complained of were not truly private facts and were logically connected to a newsworthy subject of public interest. The Court of Appeals for the Ninth Circuit affirmed, noting only the time-barred nature of the actions.

The present cause was filed on May 12, 1995, in the Circuit Court of Coahoma County, Mississippi. After service of the complaint, defendant Lemann timely removed the case to this court, basing jurisdiction on both diversity of citizenship and the federal question posed by the plaintiff's copyright claim.

The allegations of the complaint about the book in the present case are virtually identical to those in the original action. The plaintiff complains here again of statements in *The Promised Land* that he was a gang member and was kicked out of the Navy (Libel, Count I); and that he lost his virginity in a stairwell, fathered illegitimate children, and was a recovering alcoholic (Invasion of Privacy, Count II). The plaintiff also alleges the existence of the same oral agreement with defendant Lemann (Breach of Agreement, Count III), and/or his entitlement to *quantum meruit* from all defendants based on "services" he allegedly provided them (Quantum Meruit, Count V). Finally, the plaintiff asserts new claims of Misappropriation of Likeness for Profit (Count IV) and Copyright (Count VI) which are also based on the publication of material about him in the book.

In February 1995, the Discovery Channel aired a documentary film, produced by defendants British Broadcasting Corporation

("BBC") and Anthony Geffen, based on the book *The Promised Land.* According to the defendants, the film of the same name does not mention the plaintiff, his family, or any "literary works" owned by the plaintiff. Nevertheless, the plaintiff alleges that the film defamed him, invaded his privacy, misappropriated his likeness, infringed on his copyright, and owes him money in *quantum meruit* for reproducing "a service on cable television of The Promised Land that remains unpaid from the original agreement [between the plaintiff and Lemann]...."

## DISCUSSION

The defendants contend that the actions against the book defendants are barred by the doctrines of res judicata and/or collateral estoppel. Furthermore, they claim that the actions against the film defendants fail to create a genuine issue of material fact and thus are appropriate for summary judgment. Additionally, the defendants assert that many of the claims are time-barred under Mississippi statutes of limitations.

## RES JUDICATA AND COLLATERAL ESTOPPEL

The doctrines of res judicata and collateral estoppel deal with the question of whether the adjudication of certain matters is precluded by a prior adjudication. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262, 270 n. 6 (1982). Under the doctrine of res judicata, parties and their privies are precluded from relitigating claims that were or should have been raised in a prior action and have reached a final judgment on the merits. *Metro Charities, Inc. v. Moore,* 748 F.Supp. 1156, 1159 (S.D.Miss. 1990); *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *see also Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (noting parties are also bound on matters that could have been raised); *Cromwell v. Sac County,* 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876) (same).

Collateral estoppel is a derivative of res judicata with a more narrow focus. While res judicata encompasses questions which might have been litigated, collateral estoppel applies only to questions actually litigated in a prior suit. *Metro Charities,* 748 F.Supp. at 1160. Once a court has decided an issue essential to its judgment, collateral estoppel precludes the issue from being relitigated in another suit on a different cause of action involving a party to the first cause. *Metro Charities,* 748 F.Supp. at 1159. The doctrine has the effect of establishing conclusively questions of law or fact that have received a final judgment for the purposes of a later suit. In addition to protecting litigants from the burden of relitigation, collateral estoppel serves the purpose of promoting judicial economy. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 601 F.Supp. 286, 288 (S.D.Miss. 1984).

Federal law determines the preclusive effect of a prior federal court judgment. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995); *Russell v. SunAmerica Sec. Inc.,* 962 F.2d 1169, 1172 (5th Cir.1992). Under federal standards, there are four necessary criteria that must be met for res judicata to apply:

(1) there must be an identity of parties or their privies in the two actions;

(2) the judgment in the prior action must have been rendered by a court of competent jurisdiction;

(3) the prior action must have concluded with a final judgment on the merits; and

(4) the same claim or cause of action must be involved in both suits.

*United States v. Shanbaum,* 10 F.3d 305, 310 (5th Cir.1994).

Clearly, the district court in California had jurisdiction over the original diversity action and entered a final judgment on the merits, thus satisfying two of the four requirements. *See Federated Dep't Stores,* 452 U.S. at 399, 101 S.Ct. at 2428 (summary judgments and dismissals with prejudice are adjudications on the merits); *Lamb v. Equifax Services, Inc.,* 620 F.Supp. 1457 (E.D.Mo. 1985) (summary judgment in prior action on statute of limitations grounds barred subsequent suit). The decision was affirmed by the Ninth Circuit in *Haynes v. Lemann,* No.

94–55126, 1995 WL 241489 (9th Cir. April 19, 1995).[1] The court thus examines the two identity elements—parties and claims—as they relate to the original defendants, the new book defendants and the film defendants.

## The Original Defendants

■■■ The plaintiff and the original defendants (Lemann and Knopf) were parties to the California case. The four counts of the original complaint were revived by the plaintiff and again directed at these defendants. Thus, the same defendants are facing the same claims that they had previously defeated in California. Few doctrines are more intrinsic and necessary to a legal system than res judicata. At the heart of the doctrine lies the venerable concept that courts must enforce the finality of a judgment and ensure that litigation will come to an end. *Shanbaum*, 10 F.3d at 310; *Medina v. I.N.S.*, 993 F.2d 499, 504 (5th Cir.1993). The plaintiff alludes to no theory that would allow him to escape the application of this doctrine. In keeping with these fundamental notions, the court finds that the four original claims are barred.

■■■ The court now addresses the two new claims raised by the plaintiff against the original defendants. The claims of misappropriation of likeness and copyright are likewise barred on res judicata grounds as claims that should have been raised in the initial suit. As the Fifth Circuit has often explained, res judicata "prohibits either party from raising any claim or defense in the later action that was or *could have been* raised in support of or in opposition to the cause of action asserted in the prior action." *Shanbaum*, 10 F.3d at 310 (emphasis original); *see also Bullard v. Webster*, 679 F.2d 92, 93 (5th Cir.1982) (res judicata precludes "every ground as to recovery that might have been presented"). To determine what "could have been raised," the courts look to whether the present claim or claims arise from the same nucleus of operative facts as the earlier

claim. *In re Air Crash at Dallas/Fort Worth Airport*, 861 F.2d 814, 816 (5th Cir.1988). In other words:

> a "cause of action" consists of a "single core of operative facts" which give rise to a remedy. . . . Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. Thus, "*a mere change in the legal theory does not create a new cause of action.*"

*Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986) (emphasis added).

In the original case, the plaintiff alleged that the defendants published material and information that injured him in various ways. The plaintiff claimed, *inter alia*, that the defendants falsely disparaged his name and reputation; and that certain private information was disclosed that was objectionable and exposed him to contempt and ridicule. Furthermore, the plaintiff alleged that Lemann published statements without his formal consent, and was unjustly enriched by the use of certain information received from the plaintiff. Clearly, the misappropriation of likeness and the copyright claims now raised are simply new dressings on old allegations of injuries purportedly caused by publication of the book. Thus, even though the plaintiff has purported to add new legal theories, they still constitute the same cause of action for purposes of res judicata because those claims arise out of the same operative facts pled in the original action, namely, the publication of *The Promised Land*. Therefore, all remaining counts against the original defendants will be dismissed.

## The New Book Defendants

The court now considers the claims against the new book defendants (Random House, Inc. and Vintage Books). To be sure, if these defendants are considered in privity with the original defendants, then the claims against the new book defendants would meet the same fate as above. Thus, the court examines the privity issue.

1. The Ninth Circuit is currently considering a Petition for Rehearing. This, however, does not alter the final judgment entered into by the district court. *Checker Taxi Co. v. National Produc-*

*tion Workers Union*, 636 F.Supp. 201, 204 (N.D.Ill.1986) (noting that a judgment remains final despite the taking of an appeal).

Privity is simply the legal conclusion that parties are sufficiently related to merit the application of claim preclusion. It is a broad concept which "requires us to look to the surrounding circumstances" to determine whether preclusion is justified. *Russell*, 962 F.2d at 1173. It is well-settled that, in certain circumstances, a party may have his subsequent claim barred by a person who was not a party to the original litigation. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir.1992). One such situation arises when a non-party's interests were "adequately represented" by a party to the prior action. In such a case, courts have concluded that there exists a sufficiency of identity to apply the principles of res judicata and give preclusive effect to the prior judgment. *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir.1990). Adequate representation has been defined in some instances by explaining that a non-party may be bound where a party to the original suit is "so closely aligned to the non-party's interests as to be his virtual representative." *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied, Metropolitan Dade County, Fla. v. Aerojet–General Corp.*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). However, the *Meza* court warned that the concept of "virtual representation" should be confined to circumstances giving rise to "an express or implied legal relationship in which parties to the first suit are accountable" to the non-parties. *Meza*, 908 F.2d at 1272. This relationship has been found to exist between parent corporations and their subsidiaries. *Pollard v. Cockrell*, 578 F.2d 1002, 1008–09 (5th Cir.1978); *Southwest Airlines Co. v. Texas Intern. Airlines, Inc.*, 546 F.2d 84, 97 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

Defendant Knopf is a wholly-owned subsidiary of, and Defendant Vintage Books is a division of, Random House, Inc. Both Knopf and Vintage Books published *The Promised Land;* Knopf published the hardcover version, and Vintage Books published the paperback. In the opinion of the court there exists a sufficiently close relationship to afford the application of claim preclusion to these defendants.

In any event, it appears that the statute of limitations on all the actions against all the book defendants has run, thus barring the right to sue. *See Miss.Code Ann.* § 15–1–29 (three-year limitations period for unwritten and implied contracts); § 15–1–35 (one year period for libel claims); *Young v. Jackson*, 572 So.2d 378, 382 (Miss.1990) (one year period of § 15–1–35 applies to privacy torts); 17 U.S.C. § 507(b) (plaintiff cannot recover damages for infringement which took place three years or more prior to filing suit).[2] Accordingly, the same preclusive effect is afforded to all causes of action pled against the new book defendants.

**The Film Defendants**

The plaintiff alleges all counts (except breach of agreement) against the film defendants (BBC and Geffen) as well.[3] In his complaint, the plaintiff alleges the identical libel, privacy, and *quantum meruit* claims. Insofar as the plaintiff raises these issues again, it appears that they are barred by the doctrine of collateral estoppel.

Collateral estoppel is determined by the application of four elements to the underlying facts of a case. They are as follows:

(1) the issue under consideration is identical to the one involved in the prior litigation;

(2) the issue was fully and vigorously litigated in the prior action;

(3) the issue was necessary to support the judgment in the prior case; and

---

**2.** Alternatively, the original claims brought against the original defendants (excluding the breach of agreement count) serve to preclude the raising of those claims against the new book defendants. As discussed *infra*, regardless of the parties to the action, those issues have been previously adjudicated and, thus, the plaintiff is collaterally estopped from renewing them.

**3.** It is not necessary to address the question of whether the film amounts to a republication of the book so as to revive the claims against the book defendants. A threshold inquiry must be made to determine if the alleged statements are in fact actionable. As to the book defendants, that question has been answered in the negative. As to the film defendants, as discussed *infra*, the plaintiff has yet to satisfy his burden.

(4) there is no special circumstance that would make it unfair to apply the doctrine. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir.1995); *Shanbaum*, 10 F.3d at 311.[4]

This is the second time the plaintiff has asked a court of law to find that certain statements concerning him are defamatory. The plaintiff complains that the film libeled him by associating him with criminal gangs and/or organizations and by stating that he was kicked out of the Navy for missing ship movement. Complaint at 3. The district court in the prior action ruled on these very issues. The court stated that "statements that Robert Haynes was 'kicked out' of the Navy and 'missed his ship's departure' are substantially true and cannot be the basis for an action for libel." *Haynes v. Lemann*, No. 93–2774, at 8 (C.D.Cal. Nov. 10, 1993). Furthermore, the court explained that the statements associating young Robert Haynes with certain gangs were not defamatory on their face and since he "has no special damages, the alleged libel relating to the [gang association] fails as a matter of law." *Haynes* at 8–9. Thus, the issue of whether these statements were actionable as libel was previously addressed and decided. The fact that the plaintiff raises them in a new medium does not alter this determination. The plaintiff does not allege that any new or different statements constitute the gravamen of his most recent complaint. Thus, it appears that insofar as the plaintiff hinges his libel claim against the film on the exact same statements that allegedly made up his libel claim against the book, the issue, and thus the claim, is precluded.

The plaintiff's claim of invasion of privacy against the film defendants entails references to his sexual promiscuity; fathering illegitimate children; and a bout with alcoholism. Complaint at 4. Whether these disclosures created a cause of action for invasion of privacy was also decided by the district court in the previous action. The court held that "[u]nder state law and as a matter of Federal Constitutional law, Robert Haynes may have no claim for the tortious disclosure of highly offensive private facts, because his appearance in *The Promised Land* is logically related to a matter of public interest." *Haynes*, at 9. Again, the plaintiff has simply switched the vehicle on which his claim is carried. It would therefore follow, *a fortiori*, that if the disclosures that made up the privacy action on the book failed as a matter of law to create a claim, that the same issues resurrected against a film version of the book similarly fail. The court, however, reserves judgment on the claims of libel and invasion of privacy as further discovery may be necessary.

■ The plaintiff's claim of *quantum meruit*, to the extent it can be understood, appears to contend that the film reproduced a "service" (the interview) that he rendered to defendant Lemann which remains allegedly unpaid. However, the plaintiff does not allege that any new services were rendered to the film defendants. Thus, the last service that was provided to any of the defendants was the April 1990 interview. *Haynes*, at 4. Accordingly, the claim is barred by the application of the Mississippi statute of limitations. *See Miss.Code Ann.* § 15–1–29 (Supp. 1994) (three-year statute of limitations).

Lastly, the court considers the two remaining claims against the film defendants—misappropriation and copyright. These claims were not raised or determined in any previous action by the plaintiff herein. The defendants argue that nowhere in the film is the plaintiff, or any member of his family, mentioned, and no "literary works" by the plaintiff are used in the film. In response, the plaintiff suggests that the affidavit of the producer of the film not be relied on, rather, the plaintiff should have the opportunity to discover this information for himself.[5] In a

---

4. The court determines that the issues relevant to this discussion in the prior action were fully and vigorously litigated, were necessary to support the judgment, and there are no special circumstances that make the application of collateral estoppel unfair. Thus, the only question for the court is which issues are precluded.

5. The court notes that the magistrate judge stayed discovery at the case management conference in this case pending this court's determination on the summary judgment motion. The plaintiff was permitted to move the court for leave to undertake discovery relevant to the motion.

subsequent motion to the court the plaintiff asked to stay the summary judgment motion and for discovery of the film. The court is of the opinion that the plaintiff should be permitted discovery on these issues. Therefore, the court directs the defendants to provide the plaintiff and the court with a copy of the five (5) part film series, individually identified and numbered, within fifteen (15) days from the date of the order. In the discretion of the defendants, they may produce a complete transcript or script of the film if it accurately depicts the documentary as aired. Upon receipt of the tapes, the plaintiff shall have fifteen (15) days to supplement his response to the summary judgment motion. The plaintiff is directed to cite the court to each instance he claims is a basis for his actions for libel, invasion of privacy, misappropriation of likeness, and copyright infringement. In so doing, the plaintiff must direct the court to the specific tape and, in real time, the number of minutes into each segment any of the alleged statements appear. The plaintiff shall list all alleged occurrences and times and to the best of his ability quote the language in question. The plaintiff shall serve the defendants with a copy of the same. The defendants will have fifteen (15) days from receipt of the plaintiff's supplementation to file any reply. An order will issue accordingly.

### ORDER

In accordance with the memorandum opinion issued this day, it is ORDERED:

That the defendants' motion for summary judgment as to all book defendants, Nicholas Lemann, Alfred A. Knopf, Inc., Random House, Inc. and Vintage Books, is GRANTED and said defendants are DISMISSED with prejudice;

That the film defendants, Anthony Geffen and British Broadcasting Corp. are DIRECTED to provide the plaintiff and the court with a copy of the five-part film series, individually identified and numbered, within fifteen days from the date of this order in accordance with the instructions of the memorandum opinion; and

That the plaintiff is DIRECTED to supplement his response to the summary judgment motion within fifteen days from receipt of the tapes in accordance with the instructions of the memorandum opinion.

The film defendants will be allowed fifteen days from receipt of the plaintiff's supplementation to file any reply.

### SUPPLEMENTAL ORDER

This cause is presently before the court on the defendants' motion for summary judgment. On December 7, 1995, this court entered an order partially granting summary judgment as to all the "book defendants" on the basis of res judicata and alternatively on statute of limitations grounds. The court reserved judgment on the "film defendants" in order to receive additional discovery by the parties. The court was aware that the plaintiff was not permitted the discovery of the film to ascertain if the same or different defamatory statements or other protected materials appeared in the film version of the book entitled *The Promised Land*. The court thus granted the plaintiff's request for additional discovery on this issue and ordered the film defendants to produce a copy of the documentary and allowed the plaintiff to supplement his response to the summary judgment motion within fifteen days of receipt. On December 21, 1995, the plaintiff filed a Rule 59(e) motion, objecting to the court's treatment of his claims against the book defendants. The court denied the same on January 23, 1996. In the aforementioned motion, the plaintiff stipulated that he received the discovery ordered by the court on December 15, 1995. No response was forthcoming. After allowing ample time for the *pro se* plaintiff to comply with the court's order, the court now considers the remainder of the defendants' summary judgment motion.

The court has before it the affidavit of the producer of the film, Anthony Geffen. Based on his personal knowledge, Geffen has stated that neither the plaintiff nor any member of his family is mentioned, referenced or identified in the film by their name, picture or any other means. Furthermore, the film does not contain any copy-

**394**

righted work by Haynes nor was any writing, utterance, picture or creative work used in the production. *See* Ex. C ¶ 4–5.

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. That burden is not discharged by "mere allegations or denials." Fed.R.Civ.P. 56(e). All legitimate factual inferences must be resolved in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

By the standards set forth above, the defendants have provided the necessary "showing" that there exists no genuine issue for trial and in fact have shown that there exists no cause of action against the film defendants. The plaintiff has not produced any evidence to the contrary and has therefore failed to satisfy his burden under *Celotex.* The court on its own independent review of the record concludes that no statements or materials appearing in the film create a cause of action against the remaining defendants. Thus, summary judgment is appropriate.

Accordingly, it is therefore ORDERED:

That the defendant's motion for summary judgment pertaining to the film defendants is GRANTED; and

That this cause is DISMISSED with prejudice.