**CASA GRANDE, INC., A Mississippi Corporation and Henry B. Barber, Plaintiff and Counter-Defendants,**

v.

**The MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant and Counter-Claimant.**

**Civ. A. No. J81–0566(B).**

United States District Court, S.D. Mississippi, S.D.

Oct. 30, 1984.

James W. Nobles, Jr., Jackson, Miss., for plaintiff and counter-defendants.

Robert H. Weaver, Watkins, Ludlam & Stennis, Jackson, Miss., for defendant and counter-claimant.

## MEMORANDUM OPINION

BARBOUR, District Judge.

This diversity action for declaratory judgment was tried to the Court on a record consisting of stipulations and documents admitted into evidence without objection. Since there was no testimony the material facts were not in dispute. This case was abated pending decision by the Mississippi Supreme Court of the case styled *First Nat. Bank of Vicksburg v. Caruthers* since it was anticipated that *Caruthers* would announce important principles of Mississippi real property law which would be applicable to this case. *First Nat. Bank v. Caruthers*, 443 So.2d 861 (Miss.1983) has now been decided and this case is now ripe for decision.

Casa Grande, Inc. ("Casa Grande"), a Mississippi corporation, was incorporated in 1972. James N. Perkins ("Perkins") was the owner of Casa Grande's capital stock.

Casa Grande built an apartment complex consisting of eighty-four units in Hinds County, Mississippi. Permanent financing for the project was obtained through Minnesota Mutual Life Insurance Company ("Minnesota").

On January 26, 1979, Casa Grande executed a promissory note to Minnesota for $896,730.97 at an interest rate of 9½% per annum payable in monthly installments of $7,881.01, the final installment being due July 1, 2003, a period of approximately twenty-four years. This note was secured by a first deed of trust which contained a provision commonly referred to as a due-on-sale clause. Paragraph 26 provides:

> The Grantor shall not sell or transfer the property subject to this Deed of Trust, nor mortgage or pledge the said property or any personal property secured by a Security Agreement of even date herewith, without the prior written consent of the Beneficiary, its successors and assigns, and violation of this provision will constitute a default hereunder.

The security agreement encumbering the personal property contained a similar provision.

On January 10, 1980, Casa Grande by its president Perkins, requested Minnesota's consent to sell the real estate consisting of the apartment project to Henry B. Barber ("Barber"), a California citizen, according to the terms of a written contract of sale. The purchase price was $1,550,000 of which $250,000 was cash and the balance was to be paid under the terms of a wraparound mortgage for $1,300,000 carrying a 10% interest rate. This sale was contingent upon the approval of Minnesota.

By letter of January 24, 1980, Minnesota conditionally consented, provided that the yield could be increased from 9½% to 11½% with an optional call provision in the fifteenth year of the loan. No response was forthcoming from Perkins or Casa Grande and on February 7, 1980, Perkins entered into a written buy-sell agreement for the sale of all of the capital stock of Casa Grande to Barber for the same consideration contained in the January 9, 1980 real

estate sale contract. This agreement provided:

> It is understood ... that ... [Barber] ... expects to dissolve the corporation and transfer the ownership of the corporate entity to himself as an individual.

After learning of the stock sale agreement on essentially the same terms as was provided for in the contract for the sale of the real estate, Minnesota filed suit in the Chancery Court of Hinds County against Casa Grande and Perkins and asked for a judicial foreclosure of its deed of trust. The theory of the case was that the stock sale for the same consideration, including a real estate commission, as provided for in the real estate contract was a sham transaction designed solely to defeat the due-on-sale clause in the deed of trust and security agreement and the court should look through the transaction and hold that the due-on-sale clause had been violated. The primary relief requested was a judicial foreclosure.

The Chancellor held the sale of stock did not constitute a violation of the due-on-sale clause therefore Minnesota was not entitled to any relief. The decree of the Chancery Court was entered on May 28, 1981. On July 31, 1981, Casa Grande sought the consent of Minnesota for the transfer of the apartment complex to Barber which was refused. On approximately May 11, 1982, Barber and Casa Grande filed their complaint in this cause for declaratory judgment. Minnesota counterclaimed asking for declaratory relief as to its right to enforce on the due-on-sale clause.

Barber has stipulated that upon the dissolution of Casa Grande and the transfer of the apartment complex to himself, he intends to actively seek a purchaser for the property.

## RES JUDICATA

■ The Mississippi law of *res judicata* applies to this diversity action. *E.D. Systems Corp. v. Southwestern Bell Telephone Co.*, 674 F.2d 453, 457 (5th Cir.1982); *Cleckner v. Republic Van & Storage Co., Inc.*, 556 F.2d 766, 769 (5th Cir.1977).

■ Barber and Casa Grande contend that as a matter of law Minnesota may not enforce the due-on-sale clause to foreclose the deed of trust with regard to the proposed dissolution of Casa Grande and conveyance of the apartment complex to Barber because of the prior Hinds County Chancery Court decision in which it was held that the due-on-sale clause was unenforceable. Under Mississippi law it is well established that before a plea of res judicata can act as a bar, each of the following elements must be present: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of persons and parties to the cause of action, and (4) identity of the quality or character of a person against whom a claim is made. *Wright v. Mayor and Commissioners of the City of Jackson*, 421 So.2d 1219, 1221 (Miss.1982); *Cowan v. Gulf City Fisheries, Inc.*, 381 So.2d 158 (Miss.1980); *McGee v. Griffin*, 345 So.2d 1027 (Miss.1977). Here the identity of the person and parties to the cause of action, the identity of the cause of action, and the identity of the subject matter are not present.

First, the same parties are not involved in the present action. Henry B. Barber was not a party to the first action and was not bound by the prior adjudication, yet he is an indispensable party to this action. Therefore, the requirement under Mississippi law that the parties to the second action be the same as the parties to the first action, known as the mutuality rule, is not met. Gunn, *The Offensive Use of Collateral Estoppel in Mass Tort Cases*, 52 Miss.L.J. 765 (1982); *Ditta v. City of Clinton*, 391 So.2d 627 (Miss.1980); *Palmer v. Clarksdale Hospital*, 213 Miss. 611, 57 So.2d 476 (1952).

Second, the identity of the subject matter and the cause of action is different. The Chancery Court acknowledged this issue by stating on page 5 of the opinion:

> The question before the Court is, of course, did the sale of the corporation stock of Casa Grande, Inc., to Barber entitle Minnesota to foreclosure under

the due-on-sale clause of the Deed of Trust.

The court held that the sale of stock was not prohibited by the deed of trust and declined relief to Minnesota. The controversy here does not involve the sale of stock but rather whether the proposed dissolution of Casa Grande and the conveyance of the apartment complex to Barber and/or the anticipated subsequent sale by Barber to third parties would in either event entitle Minnesota to foreclose under the due-on-sale clause in the deed of trust and security agreement. Therefore, the identity of the subject matter is not the same as it was in the chancery court action. Furthermore, the cause of action is not the same because the present action deals with a transaction which was not contemplated by the Chancellor in rendering his decision. Although the issue of the applicability of the due-on-sale clause is in question in both this and the prior case, the fact that relief sought is the same does not make the cause of action identical within the meaning of res judicata. *Viator v. Stone*, 201 Miss. 487, 29 So.2d 274, 276 (1947).

Since the Chancellor found that the sale of stock did not entitle Minnesota to foreclose under the due-on-sale clause, the further finding that the due-on-sale clause was unenforceable under the laws of Mississippi was dicta, unnecessary, and not binding on the parties. *City of Jackson v. Wallace*, 189 Miss. 252, 196 So. 223, 225 (1940) (language beyond the litigation in which it is used is limited to the facts involved in the litigation, and all beyond that, proper for the construction of the particular subject matter before the court is mere dictum—not decision).

In *Johnson v. Bagby*, 252 Miss. 125, 171 So.2d 327, 332 (1965), the Mississippi Supreme Court stated that there are persuasive reasons for not applying res judicata and collateral estoppel in borderline situations with the principle reasons being that each person should be accorded his full day in court, and the difficulty of a litigant foreseeing the possible significance in future cases of matters currently being liti-

gated. In any event this case presents a borderline situation and the doctrine should not be applied.

The Court thus concludes that the prior chancery court action does not bar Minnesota from litigating the validity of the due-on-sale clause in this action.

### COLLATERAL ESTOPPEL

Like the application of Mississippi principles of *res judicata*, Mississippi's law of collateral estoppel may be applied in a diversity action such as this. *See Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir.1982) (if prior state court action, state law applies; if prior federal diversity action, federal law applies); *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir.1981). Unlike Federal common law, Mississippi does not permit the offensive use of collateral estoppel. *Hicks*, 662 F.2d at 1166, *citing Ditta v. City of Clinton*, 391 So.2d 627 (Miss.1980). Collateral estoppel as defined by the Mississippi court bars the relitigation of a specific issue actually litigated, determined by, and essential to the judgment in the former action by parties to a prior action, even though a different cause of action is the subject of the subsequent action. Under Mississippi case law, three elements must be met for collateral estoppel to apply: (1) the parties must be the same (i.e. the mutuality requirement), (2) the specific issues must have been actually litigated and (3) the issue must have been essential to a judgment in the former action. These requirements have not been met.

First, the Mississippi court has left no doubt that strict mutuality is required as a prerequisite to a claim of collateral estoppel. Explicitly rejecting the argument for the abolition of the mutuality doctrine in the context of collateral estoppel the court in *Johnson v. Bagby*, 252 Miss. 125, 171 So.2d 327, 330 (1965) stated that: "[W]e still hold that it is necessary that the parties to the subsequent action must be the same as those in the prior action." *See Ditta v. City of Clinton*, 391 So.2d 627 (Miss.1980). The strict adher-

ence to mutuality recognized in Mississippi, does not permit the offensive use of collateral estoppel whereby defendant will be barred from relitigating an issue decided against him in an earlier action involving a different party. Since Barber was not a party to the first action, the parties are different and collateral estoppel is not a bar to the issue of the enforcement of the due-on-sale clause.

Additionally, collateral estoppel is not applicable because the specific issue present in this controversy, i.e. the conveyance of real property and collateral, was not the same as the issue involved in the chancery action which was concerned with the sale of stock.

Third, before collateral estoppel can be applied, the issue in question must have been essential to the judgment. The Chancellor's holding that the due-on-sale clause was unenforceable was not essential to the judgment and was dicta. Since the essential issue of the prior case dealt with the sale of stock, once the court found that the stock sale to Barber would not trigger the due-on-sale clause, there was nothing further to adjudicate. Since the determination of the enforceability of the due-on-sale clause was not essential to the judgment of the court, collateral estoppel does not apply to prevent this Court from ruling on the merits of the case.

## GARN–ST. GERMAIN DEPOSITORY INSTITUTION ACT OF 1982

■ The Garn-St. Germain Depository Institutions Act of 1982 was enacted subsequent to the filing of this case. 12 U.S.C. § 1701j–3, provides for the preemption of state prohibitions on due-on-sale clauses and authorizes the enforcement of contracts containing due-on-sale clauses. Section 1701j–3 provides in pertinent part:

(a) ... (2) the term "lender" means a person or government agency making a real property loan or any assignee or transferee, in whole or in part, of such a person or agency ...

(b) (1) *notwithstanding any provision of the constitution or laws* (including the judicial decisions) *of any State to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.*

(2) Except as otherwise provided in subsection (d) of this section, *the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract.*

(3) In the exercise of its option under the due-on-sale clause, a lender is encouraged to permit an assumption of a real property loan at the existing contract rate or at a rate which is at or below the average between the contract and market rates, and nothing in this section shall be interpreted to prohibit any such assumption.

12 U.S.C.A. § 1701j–3 (Supp.1983) (emphasis added).

This section further provides that, if by statute or by a decision of the highest court of a state the exercise of due-on-sale clauses has been prohibited, then the clauses can be enforced as to subsequent transfers after the expiration of three years from the date of the Act, October 15, 1982. 12 U.S.C.A. § 1701j–3(c)(1) (Supp.1983). This three year period is referred to as a window period. However, the State of Mississippi has not enacted any statute preventing enforcement of due-on-sale clauses nor has the highest court of the state declared that such provisions are per se unenforceable.

Any doubt as to whether *Sanders v. Hicks,* 317 So.2d 61 (Miss.1975) prohibited the enforcement of due-on-sale clauses and thus created a Garn window period has recently been clarified by the Supreme Court of the State of Mississippi in *First Nat. Bank of Vicksburg v. Caruthers,* 443 So.2d 861 (Miss.1983). There, as in the case *sub judice* the mortgagors contended that the due-on-sale clause was unenforceable since *Sanders,* a decision by the highest

court of this state, prohibited enforcement thus creating a Garn window period. The Mississippi Supreme Court rejected the contention and held that *Sanders v. Hicks* had been erroneously decided, stating as follows:

> Therefore, insofar as *Sanders* holds that the clause in the deed of trust which prohibited the fee owner from selling the real property without the written consent of the mortgagee was invalid and unenforceable and is hereby overruled. The right of persons to contract is fundamental to our jurisprudence and absent mutual mistake, fraud and/or illegality, the courts do not have the authority to modify, add to, or subtract from the terms of a contract validly executed between two parties ....

*Caruthers,* 443 So.2d at 864.

Since there is no window period in Mississippi provided for either by statute or case decision, the Garn Act assures the enforceability of the due-on-sale clause in this case.

 Insofar as the Garn-St. Germain Act is concerned, the remaining question is whether that Act is applicable to a private lender such as Minnesota. The term "lender" is defined in § 1701j–3(a)(2) as "a person or government agency making a real property loan or any assignee or transferee in whole or in part, of such person or agency." Thus the statute explicitly recognizes a distinction between private persons and governmental agencies and is made expressly applicable to not only governmental entities but also to private entities. The legislative history and the plain wording of the Garn-St. Germain Act, make it clear that the Act applies to a private lender such as Minnesota.

This court concludes that the due-on-sale clause contained in paragraph 26 of the deed of trust is a valid and enforceable provision and that the proposed dissolution and transfer of the mortgaged property to Barber would constitute a default under the deed of trust. Similarly, the due-on-sale clause contained in paragraph 11 of the security agreement is valid and enforceable and the proposed dissolution of Casa Grande and the transfer to Barber of the collateral would constitute a default under both the security agreement and the deed of trust entitling Minnesota to full resort to all available remedies.

The due-on-sale clause in both the deed of trust and the security agreement will continue to be valid and enforceable obligations in the event of the transfer of the mortgaged property, real or personal, to subsequent vendees.

Minnesota, the defendant and counterclaimant, is entitled to entry of a declaratory judgment declaring the rights of the parties consistent with this opinion.

Each party shall be responsible for costs.