**Mickey D. WALKER, Plaintiff,**

v.

**KERR–McGEE CHEMICAL CORPORATION, Defendant.**

**Civ. A. No. EC 87–176–D–D.**

United States District Court, N.D. Mississippi, E.D.

May 8, 1992.

Charles D. Easley, Jr., Columbus, Miss., for plaintiff.

Kenneth E. Milam, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Kerr–McGee Chemical Corporation ("Kerr–McGee"), the named defendant in the above-captioned negligence suit, moves this court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Original diversity jurisdiction rests with this court under 28 U.S.C. § 1332. Plaintiff Mickey DeWayne Walker ("Walker") asserts Alabama citizenship, defendant acknowledges the state of Delaware as its place of incorporation,[2] and the amount in controversy exceeds $50,000.

---

1. The Defendant originally moved for summary judgment, or in the alternative for a stay of further proceedings, on March 30, 1988. In the interest of comity, however, the undersigned deferred consideration of the dispositive motion and instead chose to "stay [the] proceedings ... until plaintiff's [concurrent] workers' compensation claim [had been] fully and finally resolved" in state court. *Walker v. Kerr McGee,* No. EC 87–176–D–D (N.D.Miss. May 31, 1988) (Order of Judge Glen H. Davidson issuing stay of proceedings, p. 5.). The Mississippi Supreme Court has since ruled on plaintiff's appeal of the denial of his workers' compensation claim. Having the benefit of the state court's final adjudication of plaintiff's claim under the Mississippi Workers' Compensation Act, *see* MISS. CODE ANN. §§ 71–3–1 *et seq.,* this court is prepared to rule dispositively on defendant's motion for summary judgment in Walker's negligence action.

2. Kerr–McGee is registered to do business with the Secretary of State of Mississippi and qualified to do business in the State of Mississippi. (Pl.'s Compl., par. II.)

Based on its thorough review of the pleadings, briefs, depositions, authorities, the record as a whole and its own research, the court hereby denies defendant's summary judgment motion.[3] Genuine issues of material fact exist concerning defendant's alleged negligence and plaintiff's awareness and assumption of risk. Set out below is the court's opinion.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Organizational Background

Plaintiff Walker was employed with Sunland Services, Inc. ("Sunland") as an ironworker. Sunland had recently merged with ISI, Inc. ("ISI"). Prior to its merger with Sunland, ISI had entered into a construction agreement with Kerr–McGee to serve as the chemical company's general contractor for construction work at Kerr–McGee's Hamilton, Mississippi facilities. Pursuant to merger, Sunland replaced ISI as general contractor.

### B. The Accident

Walker sustained personal injuries at defendant Kerr–McGee's Hamilton, Mississippi pigment plant on or about August 12, 1985, when he was exposed to a cloud of chemical fumes. The fumes were released when a Kerr–McGee worker opened a valve, apparently with no warning, and permitted spent sulfuric acid to flow into a full pigment tank to either lower or raise the pH level of the paint pigment.[4] The combination of the acid and pigment created a thick cloud of smoke that rose from the tank and engulfed the area. Walker was standing on a work platform approximately six to ten feet above and five feet to the side of the pigment tank; he was sanding and cleaning the shafts of a motor and aligning a gearbox when the fumes emitted. Exposure to the chemical vapors reportedly caused plaintiff to experience a burning sensation in his eyes, lungs and chest.[5]

Prior to this incident, Walker and other crew members on several occasions complained of chlorine like vapors "burning our lungs or making our eyes burn." (Walker Dep., Sept. 16, 1987, p. 24.) They raised these complaints during Sunland's safety meetings, held routinely every Monday morning. Apparently a vacuum system attached to the tank was not working properly and had been disconnected. (*Id.* at 17.) When operative, the mechanism is designed to consume the chemical fumes caused when the acid mixes with the liquids stored in the pigment tank. In place of the malfunctioning vacuum, a polyurethane tent was erected to entrap the fumes; the vapors, however, were still escaping.

Arrangements had been made to bring in a safety representative from Kerr–McGee in Oklahoma City, Oklahoma, who would review the problem and meet with the Sunland workers. Walker objected to working in the area but was told "you got to go in there and do it." (Walker Dep. at 24)

### C. The Medical Treatment

Upon descending the platform, Walker was assisted out of the building and taken to Kerr–McGee's first-aid station where his eyes were flushed with water. At the insistence of Sunland's general foreman Mike Walker, plaintiff Walker was subsequently transported to the Golden Triangle Medical Center emergency room located in Colum-

---

**3.** In reaching its decision, the court is guided by the standard encompassed under Federal Rule 56(c): Summary judgment is rendered when the court is convinced that (1) no genuine issue of material fact exists and (2) movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

**4.** According to plaintiff's deposition testimony, the acid is added to raise the pH level; defendant takes the opposite view. (Def's Mem.Supp. MSJ.) It is not necessary for the court to deter-

mine which assertion is correct; the inconsistency is merely noted.

**5.** A letter to one of plaintiff's treating physicians (Dr. Laws) from Kerr–McGee's pigment plant manager B.J. Montgomery reveals that Walker was exposed to nitrogen oxides that could have included nitrogen oxide, nitrogen tetroxide and nitrogen pentoxide; traces of chlorine were also present. He was also exposed to titanium oxide and various other chemicals.

bus, Mississippi [6] where he was examined by Albert H. Laws, M.D., a local ophthalmologist. Dr. Laws initially treated Walker for chemical keratoconjunctivitis.[7] As his treating physician, Laws provided Walker with further medical care. An examination three days after the incident revealed some improvement and fewer corneal abrasions. Laws advised his patient that he could return to work on August 19, 1985.

Walker was seen again by Laws on August 29, September 5 and November 5, 1985.[8] During these examinations, the patient continued to complain of blurred vision even though all of the corneal abrasions had healed. On the first of these three visits, Dr. Laws had discovered that Walker had an "unusual inflammatory collection of white blood cells" in the far periphery of the left retina. Clinically known as pars planitis, the condition is commonly referred to as snowballs.[9] (Dep. of Albert H. Laws, M.D., March 12, 1986, p. 15.) He referred Walker to a retinal specialist in Memphis, Tennessee, David Meyer, M.D. (Id. at 16), who confirmed the diagnosis. Plaintiff sought further medical care from Connie McCAA, M.D., a physician at the University of Mississippi School of Medicine. She too has diagnosed Walker's condition as pars planitis.[10] (Dep. of Connie Smith McCAA, M.D., October 21, 1986, p. 5.)

■ The cause of pars planitis is unknown.[11] More importantly for present purposes, there is no known correlation between the inflammatory eye condition and exposure to chemical fumes. None of the above-named physicians believe that Walker's exposure to the fumes caused his pars planitis; concurrently, they are unable to say that it did not cause it. While Dr. Laws does not know how the exposure to chemical fumes and the inflammatory eye condition relate, he remarked that the "chronological fashion is certainly suspicious that they might be related." (Laws Dep. at 20.) Similarly, Dr. McCaa, when asked during her deposition whether Walker's accident caused his eye condition, stated, "I cannot state that it caused it. I also cannot state that it didn't cause it." (McCaa Dep. at 21–22.)

Though somewhat tenuous, the medical testimony seems to suggest that a relationship between the accident and the eye disease is at least plausible. Coupled with the absence of any prior eye trouble in Walker's personal medical history, the court cannot comfortably hold that there is no "genuine issue" where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita v. Zenith*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538, 552 (1986). Thus, an award of summary judgment would be inappropriate.

### D. The Claims

#### 1. *Workers' Compensation*

As an employee, plaintiff sought recovery against Sunland under the Mississippi workers' compensation laws; his claim was, however, denied. The administrative law judge ("A.L.J.") who heard the case,

---

6. Columbus is approximately twenty miles south of Hamilton.

7. In nonclinical terms, Walker was treated for chemical burns to the exterior of each eye.

8. Plaintiff had missed an appointment with Dr. Laws scheduled for January 6, 1986. As of March 12, 1986 (the date of Dr. Laws' deposition), plaintiff had not rescheduled. However, nothing in the record indicates that November 5, 1985 was Walker's last scheduled and honored appointment with Dr. Laws.

9. Dr. Laws testified during deposition that he "noted ten to twelve white droplets, kind of like snowballs, extremely minute, but kind of like snowballs, in the far periphery of the [left] retina."

10. When deposed, Dr. McCAA stated that "[o]n the inside of his eye, right behind the iris, there is a collection of what ophthalmologists call snowballs. It's just big, white areas that are packed all around, especially inferiorily right behind the iris in the pars planar area." (McCaa Dep., October 21, 1986, p. 5, 6.)

11. Dr. Laws compared pars planitis to arthritis, another inflammatory condition, saying, "as common as [rheumatoid arthritis of the joints] is, we [the medical profession] have no idea what causes arthritis."

T.W. Pace, found no causal connection or relationship between the pars planitis condition and plaintiff's exposure to toxic gases at Kerr–McGee's pigment facility. Following the initial workers' compensation ruling, Walker undertook a series of unsuccessful appeals beginning with his petition to the Mississippi Workers' Compensation Commission for review of the A.L.J.'s decision. The Commission affirmed the A.L.J. and Walker appealed to Circuit Court on December 8, 1987. The Circuit Court of Monroe County affirmed the Commission on August 30, 1990. On appeal to the Mississippi Supreme Court, the Circuit Court judgment was affirmed on June 26, 1991.

### 2. *The Negligence Suit*

Walker also commenced an action for damages arising from his exposure to chemical fumes against Kerr–McGee in this federal district court on June 3, 1987, alleging negligence. Based on the state court decision finding no causal connection between the chemical accident and plaintiff's pars planitis, defendant asserts that Walker is collaterally estopped from "relitigating the issue of whether his injuries were caused by exposure to chemical fumes."[12] (Def.'s Mem.Supp. MSJ, p. 13.) Contending that Walker was aware of and, therefore, assumed the risks and hazards of exposure to the chemical fumes, the company denies any liability to Walker for any injuries he may have sustained.

## II. LEGAL DISCUSSION

### A. The Full Faith and Credit Clause, U.S.C. Art. 4, § 1 and 28 U.S.C. § 1738

28 U.S.C. § 1738 has been construed as requiring federal courts to "give preclusive effect to state court judgments whenever the courts of the state from which the

judgments emerged would do so." *Collard v. Incorporated Village of Flower Hill,* 604 F.Supp. 1318, 1322 (E.D.N.Y. 1984), *quoting Allen v. McMurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). According to 28 U.S.C. § 1738,

> ... judicial proceedings of any court of any such State.... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken ...

■ To determine in a particular case whether a prior state court judgment is to be accorded preclusive effect in the later federal proceeding, reference is had to state law since the rules of preclusion are founded on the premise that a state court judgment is to be given the same preclusive effect in federal court as the judgment would have in the courts of the state from which the judgment emerged. *Metro Charities Inc. v. Moore,* 748 F.Supp. 1156, 1160 (S.D.Miss.1990). In conjunction with 28 U.S.C. § 1738, the court considers the companion doctrine of collateral estoppel in determining whether issue preclusion applies in Walker's case.

### B. Collateral Estoppel

■ Res judicata and collateral estoppel both deal with the question of whether the adjudication of certain matters is precluded by a prior adjudication. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889–90 n. 6, 72 L.Ed.2d 262 (1982). Under the doctrine of res judicata, parties and their privies are precluded from relitigating claims that were or could have been raised in a prior action and have since reached a final judgment on the merits. *Metro Charities,* 748 F.Supp. at 1159.

---

**12.** Based on a cursory look at the collateral estoppel issue/argument in the context of defendant's Motion to Stay, the court stated but postponed ruling that a resolution of the causal connection issue in the workers' compensation matter against Walker "will have a collateral estoppel effect in [the] lawsuit" against Kerr–McGee. (Order of Judge Glen H. Davidson,

May 31, 1988 at 4, 5.) Defendant's Motion for Summary Judgment compels the court to reexamine the issue of collateral estoppel; a closer review of the doctrine leads the undersigned to conclude that collateral estoppel is not applicable in the instant case. The court's analysis is explained later in its opinion.

Collateral estoppel is a derivative of res judicata with a more narrow focus. While res judicata encompasses questions which might have been litigated, collateral estoppel applies only to questions actually litigated in a prior suit. *Metro Charities*, 748 F.Supp. at 1160; *see Johnson v. Bagby*, 252 Miss. 125, 171 So.2d 327 (Miss.1965). Once a court has decided an issue essential to its judgment, collateral estoppel precludes the issue from being relitigated in another suit on a different cause of action involving a party to the first case. *Metro*, 748 F.Supp. at 1159; *see Ingalls Shipbuilding Div., Litton Systems, Inc. v. Parson*, 495 So.2d 461, 463 (Miss.1986); *Lyle Cashion Co. v. McKendrick*, 227 Miss. 894, 87 So.2d 289, 293 (Miss.1956); *Lee v. Wiley Buntin Adjuster, Inc.*, 204 So.2d 479 (Miss.1967); *see Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The doctrine has the effect of establishing conclusively questions of law or fact that have received a final judgment for the purposes of a later lawsuit. *Garraway v. Retail Credit Co.*, 244 Miss. 376, 141 So.2d 727 (Miss.1962).

■ In addition to protecting litigants from the burden of relitigation, collateral estoppel serves the purpose of promoting judicial economy. *State Farm Mutual Automobile Insurance Company v. Universal Underwriters Insurance Co.*, 601 F.Supp. 286, 288 (S.D.Miss.1984). The general rule remains, however, that fact questions should be completely litigated in each case; the doctrine of collateral estoppel is merely an unusual exception to the general rule. *State Farm*, 601 F.Supp. at 288. "Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied." *Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District*, 437 So.2d 388, 397 (Miss.1983).

1. *The Application of Federal or State Collateral Estoppel Standards Under 28 U.S.C. § 1738—Which Applies?*

A determination of whether federal or Mississippi collateral estoppel applies in the instant case determines the disposition of defendant's motion for summary judgment insofar as it relates to the issue of whether the exposure to the chemical outburst caused Walker's pars planitis. If federal collateral estoppel principles are applicable, then all of the requisite elements are satisfied; if on the other hand, the collateral estoppel standards of Mississippi law are the correct guidelines to follow, Walker is not barred from relitigating the issue of whether his chemical accident and his eye disease are connected. Thus, the issue for the court, in considering 28 U.S.C. § 1738, is whether to apply state or federal collateral estoppel standards to determine the effect of the Mississippi court rulings denying Walker's workers' compensation claim.

a. Federal Rules of Collateral Estoppel

■ Under federal standards, there are three necessary criteria that must be met for collateral estoppel to apply:

(1) that the issue at stake be identical to the one involved in the prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation [has] been a critical and necessary part of the judgment in that earlier action.

*Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir.1981); *Johnson v. United States*, 576 F.2d 606, 615, 49 A.L.R.Fed. 311 (CA5 Fla.1978), *appeal after remand Johnson v. United States*, 631 F.2d 34 (CA5 Fla.1980), *reh'g. denied, Johnson v. U.S.*, 636 F.2d 314 (CA5 1981), *cert. denied, Johnson v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

b. Mississippi's Collateral Estoppel Standard

■ Under Mississippi case law, collateral estoppel operates to bar litigation of an issue where four elements are satisfied: (1) The plaintiff is seeking to relitigate a specific issue; (2) the issue has already been litigated in a prior lawsuit; (3) the issue was actually determined in the prior lawsuit; and (4) the determination of the

issue was essential to the judgment in the prior lawsuit. *Dunaway v. W.H. Hopper & Associates, Inc.*, 422 So.2d 749, 751 (Miss.1982).[13]

### C. Mutuality Requirement

■ Aside from the above outlined factors, the Mississippi courts, despite recent trends elsewhere, have left no doubt that strict mutuality is required as a prerequisite to a claim of collateral estoppel. *See Casa Grande, Inc. v. Minnesota Mutual Life Ins. Co.*, 596 F.Supp. 1385, 1389 (S.D.Miss.1984); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 208 (5th Cir.1983); *Schuster*, 861 F.2d at 1373 (Mississippi requires strict identity of the parties before collateral estoppel applies). Explicitly rejecting the argument for the abolition of the mutuality doctrine in the context of collateral estoppel, the Mississippi Supreme Court in *Johnson*, 171 So.2d at 330, stated, "[W]e still hold that it is necessary that the parties to the subsequent action must be the same as those in the prior action." *See Ditta v. City of Clinton*, 391 So.2d 627, 629 (Miss.1980). A final decision of an issue on its merits is normally viewed as preclusive "only if there is an identity of parties from one suit to the next." *State of Mississippi ex rel. Moore v. Molpus*, 578 So.2d 624, 640 (Miss.1991). Since *Ditta*, however, Mississippi has recognized parties to be identical if there is privity between them. *Moses v. Flanagan*, 727 F.Supp. 309, 311 (N.D.Miss.1989); *see Walton v. Bourgeois*, 512 So.2d 698, 700 (Miss.1987) (Mississippi law of preclusion applies to parties and their privies); *Molpus*, 578 So.2d at 640 (privity expresses identity of parties as well).

■ In recent years, the "identity of the parties" rule, or the "mutuality doc-trine," whichever way it is expressed,[14] has eroded significantly and a majority of jurisdictions now permit the offensive use of collateral estoppel.[15] For instance, in New York, it is no longer necessary for the parties to be identical in both suits for collateral estoppel to be available. *Norris v. Grosvenor Marketing Limited*, 632 F.Supp. 1193, 1195 (S.D.N.Y.1986) *citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). 28 U.S.C. § 1738 applies, regardless of whether the same parties are before the court. *Young v. McDaniel*, 664 F.Supp. 263, 265 (W.D.Ky.1986). Precisely the same principle was enunciated earlier in the case of *Collard*, 604 F.Supp. at 1322 where the district court directly referred to the United States Supreme Court decision in the *Parklane Hosiery* case that identical parties in both suits are not necessary for the application of collateral estoppel. *Young*, 664 F.Supp. at 265. Further erosion of the strict identity of parties requirement is evident in Connecticut where "collateral estoppel prohibits the relitigation of the same claim when the plaintiff received a 'full and fair' opportunity to litigate [the] claim in the prior action, regardless of whether the defendant was a party in the prior action." *Vernon Village, Inc. v. Gottier v. Van Ostrand*, 755 F.Supp. 1142, 1148 (D.Ct. 1990). Similarly, Texas law now appears to permit collateral estoppel against one who has litigated and lost an issue by one who was not a party to the prior litigation. *Reimer v. Smith*, 663 F.2d 1316, 1326 (5th Cir.1981); *see Hardy v. Fleming* 553 S.W.2d 790 (Tex.Civ.App.1977); *Seguros Tepeyac, S.A., Compania Mexicana v. Jernigan*, 410 F.2d 718, 727 (5th Cir.), *cert. denied*, 396 U.S. 905, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969).

---

**13.** The *Dunaway* test has been consistently followed by Mississippi courts. *See Schuster v. Martin*, 861 F.2d 1369, 1372, fn. 4 (5th Cir.1988).

**14.** The terms are interchangeable.

**15.** By invoking offensive collateral estoppel, a stranger to a prior litigation can estop a party from relitigating an issue decided against that party in the earlier lawsuit. *Casa Grande*, 596 F.Supp. at 1390. More elaborately stated, "a judgment may be pleaded by a stranger to estop a party to a prior proceeding from denying what was there judicially determined if the issue was actually contested, actually determined, necessary to the judgment and the party had a full and fair opportunity to litigate it." 1B MOORE, JAMES WILLIAM & WICKER, JEREMY C., MOORE'S FEDERAL PRACTICE par. 0.411[1] p. 37 (2d ed. 1992).

By contrast, Mississippi's reluctance to abandon the mutuality requirement as a prerequisite to collateral estoppel "has been characterized as being rigid as any now extant." *Stovall*, 652 F.2d at 540, *citing* Note, Collateral Estoppel—the Multiple Tort Claimant Anomaly, 41 Miss.L.J. 497, 498 (1970). In its strict adherence to the mutuality of parties rule, Mississippi law effectively forecloses the offensive use of collateral estoppel.

■■■■■ As a non-party to the prior state court action between Walker and Sunland, Kerr–McGee is attempting to utilize offensive collateral estoppel and prevent Walker from relitigating the issue of a causal connection between exposure to chemical fumes and pars planitis. In the majority of jurisdictions the chemical company would more than likely succeed; it was not a party to the prior action and the issue was decided against Walker following a "full and fair opportunity to litigate." Mississippi, however, is not among the majority of jurisdictions recognizing offensive collateral estoppel. The law of the Magnolia state requires a showing of privity "of a kind which is not present here" before Kerr–McGee (the defendant in the present action and a stranger to the prior state litigation) could estop Walker from relitigating in the present lawsuit, the issue decided against him in state court. *Stovall*, 652 F.2d at 540. A person privy to a party to a judgment is treated, for collateral estoppel purposes, as if he were a party, on the grounds that his rights were before the court though his name did not appear in the pleadings. 1B Moore's Federal Practice at [3.—1] Privity, p. 731.

In support of its claim that collateral estoppel applies, Kerr–McGee cites *Environmental Defense Fund ("E.D.F.") v. Alexander*, 501 F.Supp. 742, 750 (N.D.Miss. 1980). While Judge William Keady applied collateral estoppel in *Environmental Defense Fund*, Kerr–McGee's reliance on the case is entirely misplaced. Defendant noticeably fails to mention that the EDF parties were the same as those in prior litigation. As characterized by Judge Keady, the case was yet "another chapter in the saga of the ongoing controversy relating to the Tennessee–Tombigbee Waterway (TTW)." *Id.* at 745.[16] As it had done previously, the EDF brought suit against the TTW and the U.S. Army Corps of Engineers.[17]

The EDF case hardly lends support to Kerr–McGee's argument that collateral estoppel is applicable. It actually reminds the court of the poor reception collateral estoppel receives in Mississippi when the doctrine is solicited "offensively by one who was not a party in the prior action." *Id.* at 750.

■■■■■ Kerr–McGee was not a party to the prior action in state court. Moreover, it has no privity with Sunland, whom Walker sued under Mississippi's workers' compensation statutes prior to suing Kerr–McGee.[18] Although the exact parameters of the requirement for party identity in Mississippi have not been firmly established, *see State Farm Mutual*, 601 F.Supp. at 289, the court is of the opinion that the independent contractor relationship between Kerr–McGee is incomparable to the type of association which Mississippi courts have construed as satisfying the identity of parties requirement. *See State Farm Mutual*, 601 F.Supp. at 289 (although suit did not name insurance compa-

---

**16.** The Tennessee–Tombigbee Waterway was authorized by Congress in 1946 as a navigation project in Alabama and Mississippi. *Environmental Defense Fund*, 501 F.Supp. at 745.

**17.** On July 14, 1971, EDF brought a class action suit against the U.S. Army Corps of Engineers to enjoin the construction of the Tennessee–Tombigbee Waterway. The public interest group with additional plaintiffs brought another action on November 30, 1976, to enjoin the continued construction of the waterway against the

same defendants as before. Thus, the identity of parties, or mutuality requirement had been met and collateral estoppel was applicable.

**18.** The court dispenses with an extensive discussion of privity other than to say that none of the traditional relationships where one of the parties is deemed to be in privy with the other are present in the instant case. Some examples of parties in a relationship of privity are: lessor-lessee, bailor-bailee, trustor-trustee, and principle-agent.

nies as parties, identity requirement was met since companies controlled litigation).

The other major case defendant cites for the proposition that collateral estoppel applies, *Ingalls Shipbuilding Div.*, 495 So.2d 461, is likewise unsupportive; there, too, the parties were the same in both sets of litigation. Parsons, the original plaintiff in the *Ingalls* case, filed a disability claim against Ingalls under the Longshoremen's Act. *Id.* at 462. He subsequently filed another disability claim against the shipbuilding company under the Mississippi Workers's Compensation Act. *Id.*

Parsons' claim under the Longshoremen's Act was barred for failure to give Ingalls proper notice of his ailment under the statute. *Id.* The Mississippi Workers' Compensation Act had an identical notice provision. *Id.* at 463. In moving to dismiss the workers compensation claim, Ingalls argued that Parsons was estopped from relitigating the issue of whether he fulfilled the notice requirements of the Mississippi Workers' Compensation Act. Rather than rule on the motion, the administrative law judge who heard the case found that Parsons was entitled to disability benefits. *Id.* The Mississippi Supreme Court held that the administrative law judge erred and reversed the decision. *Id.* at 464.

### D. *Erie* [19] Principles

██ A federal court sitting in a diversity case is *Erie* bound to apply the substantive law of the forum state. Since the court is presently concerned with the effect of a prior state court determination, it is compelled to use state law. *See Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir.1981), *reh'g denied*, 668 F.2d 531 (5th Cir.1982) (if prior state court determination, state law applies). Thus, Mississippi law controls in the question whether collateral estoppel is applicable here. It has long

been recognized in Mississippi's jurisprudence that collateral estoppel may be applied in a diversity action such as the one presently at bar. *Casa Grande*, 596 F.Supp. at 1389. It is well settled in the Fifth Circuit that in a federal diversity case a prior state court judgment cannot be given a greater collateral estoppel effect than the state in which the court sits would give it apparently because *Erie* principles require the federal court sitting in diversity to apply the state's law of collateral estoppel. *Reimer*, 663 F.2d at 1325, *see Commercial Box & Lumber Co. v. Uniroyal Inc.*, 623 F.2d 371 (5th Cir.1980); *Cleckner v. Republic Van & Storage Co., Inc.*, 556 F.2d 766 (5th Cir.1977); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 325, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971) (footnote omitted). The same is true for federal courts in general.[20] *Reimer*, 663 F.2d at 1326.

██ When, however, a federal court sitting in diversity is considering the collateral estoppel effect of a prior federal court judgment, the Fifth Circuit courts apply federal common law. *Reimer*, 663 F.2d at 1325; *Aerojet–General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Willis v. Fournier*, 418 F.Supp. 265 (M.D.Ga.1976), *aff'd without opinion*, 537 F.2d 1142 (5th Cir.1976). When issues have been previously determined in a federal diversity action, federal standards govern the preclusive effect of the prior judgment on a subsequent diversity action. *Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1425, 1426 (S.D.N.Y.1991), *citing Stovall*, 652 F.2d at 540–41 (other citations omitted).

Clearly, the prior decision denying Walker's workers' compensation claim was a state court determination. Thus, Mississippi collateral estoppel standards are at play

---

**19.** *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**20.** *But cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1982) where a possible exception for collateral estoppel is provided. If the state still adheres to the mutuality rule, the federal court may apply estoppel offensively or

defensively in accordance with federal principles. Although Mississippi still vehemently adheres to the mutuality requirement, this court declines to follow the Restatement in the interest of comity and prefers to interpret Mississippi law as it presently exists.

in the instant case. In finding that Mississippi law applies, the court is of the opinion that Walker is not precluded from relitigating the issue of whether his exposure to chemical fumes caused him to develop pars planitis. Together, Kerr–McGee's non-party status in the prior state court decision and the absence of privity between it and Sunland prevent the application of collateral estoppel in the present case under Mississippi guidelines. Therefore, on the issue of collateral estoppel, defendant's motion for summary judgment is denied.

### E. Assumption of Risk

In support of its motion for summary judgment, defendant alleges that plaintiff was aware of the chemical fumes and assumed the risk of exposure. The company maintains that plaintiff or his employer Sunland, or both, were fully aware of and appreciated any dangers involved. Consequently, it asserts that any duty owed by Kerr–McGee was discharged since plaintiff assumed the risk.

To establish the defense of assumption of risk, defendant has the burden of proving that the plaintiff or his employer or his foreman or supervisor (1) had knowledge of facts constituting a dangerous condition or activity; (2) knew the condition or activity was dangerous; (3) appreciated the nature or extent of the danger; and (4) that the plaintiff voluntarily exposed himself to that danger. *Gray v. Martindale Lumber Company*, 515 F.2d 1218, 1219 (5th Cir.1975). If an assumption of risk defense is established, a plaintiff is precluded from recovering, even though the defendant may be guilty of negligence. *Id.*

The court is of the opinion that genuine issues of material fact exist concerning Walker's awareness and assumptions of risk with respect to the third and fourth elements of the defense. A reasonable fact finder could conclude from the evidence that Walker did not appreciate the nature and extent of the danger. While he and others complained of burning sensations in their lungs from the chlorine like vapors, reasonable jurors could find that Walker did not anticipate the chemical eruption that occurred. Moreover, reasonable jurors could find that plaintiff did not voluntarily choose to expose himself to the dangerous condition. The record indicates that plaintiff objected on more than one occasion to working in the pigment tank area but was told he "had to go in there and do it." From the evidence presented, a reasonable fact finder could conclude that fear of losing his job forced plaintiff to continue working in the pigment tank facility.

### F. Negligence

Having found that questions of fact exist concerning plaintiff's awareness and assumption of risk, the court cannot conclude, for summary judgment purposes, that Kerr–McGee was relieved of a duty to warn Walker. The evidence creates a jury question of whether Kerr–McGee negligently released acid into the pigment tank, thereby causing a chemical reaction that exposed plaintiff to toxic fumes. *See City of Jackson v. Ball*, 562 So.2d 1267 (Miss. 1990) (city water department chlorinating new water line unwittingly released a burst of chlorine gas which contractor's worker inhaled, resulting in respiratory injury; court could not conclude from the evidence that no reasonable juror could have found that city employees were negligent). Thus, Kerr–McGee is not entitled to summary judgment.

Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *St. Amant v. Benoit*, 806 F.2d 1294 (5th Cir.1987). The court is of the opinion that Kerr–McGee has not demonstrated the absence of a genuine issue of material fact. *Pope v. Mississippi Real Estate Comm.*, 695 F.Supp. 253, 261 (N.D.Miss 1988). Therefore, the instant motion is denied.

An order in accordance with this memorandum opinion will issue.